

1    JEHAN ZEB MIR, MD
     417 VIA ANITA
2    REDONDO BEACH, CA 90277
     (310) 373-4029

# UNITED STATES DISTRICT COURT

## KANSAS CITY

## KANSAS 66101

| | |
|---|---|
| **JEHAN ZEB MIR, MD** | **Case No.:** 15-CV-9097 JAR/GLR |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| vs. | |
| **JAY BROWN, an individual and as Executive for Westport Insurance Corporation** | **COMPLAINT FOR DAMAGES** |
| | **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RIGHTS** |
| **WESTPORT INSURANCE CORPORATION As Respondeat Superior** | **EXTRINSIC FRAUD** |
| **IUNGERICH & SPACKMAN A California Law Corporation** | **RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT VIOLATION** |
| **RUSSELL IUNGERICH, an individual PAUL SPACKMAN, an individual** | **CONSPIRACY TO VIOLATE CIVIL RIGHTS** |
| **Defendants** | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

# NATURE OF ACTION

Defendant 'Iungerich & Spackman', Russell Iungerich and Paul Spackman ( Collectively hereinafter 'I & S') conspired with Defendant Jay Brown an employee of Westport Insurance Corporation to injure Plaintiff by 'double dipping' in obtaining two separate judgments in attorney fees against Plaintiff in an amount of $76,909 and $ 30,160.10 in 2005 and 2006 respectively without ever disclosing to the California state court or to the Plaintiff on each occasion that the Defendants ' I & S' had received the monies as payment in full for the same attorney fees from the Westport Insurance Corporation.

Then at the time of renewal of such judgments in 2013 in California state court Defendants claimed interest on two judgments at a rate of ten (10) percent since 2005 and 2006 respectively once again without ever disclosing to the California state court or to the Plaintiff that the Defendant 'I &S 'had received the monies as payment in full for the same attorney fees from the Westport Insurance Corporation.

In furtherance of the conspiracy, Defendants entered a confidential agreement to cover up such payments as part of a grand scheme to injure Plaintiff through racketeering influenced and corrupt activities, false invoicing, unjust enrichment, civil right violations, and to cause severe emotional distress.

Prior to renewal of judgment on May 31, 2013in the California state court Plaintiff found out about these payments and made a motion to set aside and vacate renewal of judgment. The California law places a burden upon debtor to provide evidence of payments which would otherwise reduce the debt or the amount requested in the renewal of judgment.

Plaintiff demanded that Defendants 'I& S' correct and credit the amount received from Westport Insurance Corporation because Defendants incurred no fees and suffered no monetary damages in the said amount.

1    Defendants 'I & S' declined and would not admit or deny before the California

2    state court if such payments were made in full by Westport Insurance Corporation

3    Plaintiff obtained Subpoena duces tecum issued by California state court for

4    Westport to provide evidence of payments of  attorney fees.

5    Defendants 'I&S' conspired with Defendant Jay Brown who is an Executive at the

6    Westport Insurance Corporation,  to disobey subpoena duces tecum thus

7    preventing Plaintiff from providing proof of payments. The California state court

8    never ruled on this issue presented and renewed judgment as requested by

9    Defendant 'I&S' on these amounts.

10   As a direct result of the conspiracy Defendants obtained renewal of judgments on

11   double dipped amounts against Plaintiff.

12

13                                  **Jurisdiction:**

14

15   1. This suit is brought under the 14th Amendment to the United States Constitution,

16   as enforced through 42 U.S.C. § 1981 §1983, §1985, §1986; § 1988 under

17   Racketeer & Corrupt Influence Organization Act 18 U.S.C. § 1964(c).

18   2. The Court has **diversity jurisdiction** over Claims under 28 U.S.C.A. § 1332 (a)

19   (1) as the amount in controversy far **exceeds $75,000** exclusive of interest and

20   costs. Plaintiff is, and was at all times mentioned, domiciled in State of California.

21   Defendant Jay Brown  in his individual capacity and as an Executive at Westport

22   Insurance Corporation ( hereinafter 'WIC') is, and was at all times mentioned,

23   domiciled in, with Corporate Head Offices in State of Kansas.

24     The business offices for both Defendant Jay Brown and his employer 'WIC' are

25   one and the same and located at 5200 Metcalf. Overland Park, Kansas 66201.

26   'WIC' is respondeat superior of and also vicariously liable for the tortuous acts of

27   Jay Brown.

28

1   The Court has **personal jurisdiction** over Defendant 'I & S' because of

2   conspiratorial acts between Defendants Jay Brown and 'I&S' causing injury to

3   Plaintiff in California. Defendant 'I & S' also solicits and provides services to

4   clients from state of Kansas including Westport and to clients and members of

5   Westport Insurance Corporation. Jay Brown represented to Plaintiff that Defendant

6   'I & S' had an attorney-client relationship with Westport Furthermore, Court has

7   personal jurisdiction under **Federal RICO long arm statutes** and **state long arm**

8   **statutes** even though Court is not limited to state long arm statutes when federal

9   law provides for service of process.

10  3. The Court has jurisdiction on all of the Claims presented in this Complaint.

11   Defendants 'I & S' had previously corruptly influenced the justices of the

12  California state court of appeal 2nd and obtained order to enforce tentative

13  "Settlement Terms" against Plaintiff in favor of three out of four parties who were

14  not parties to mediation, settlement or to the tentative " Settlement Terms".

15  Furthermore, same panel of state court of appeal awarded two exorbitant

16  judgments for attorney fees of $ 76,909 and $ 30,160.10, where all Defendants had

17  fraudulently concealed payments of the same attorney fees from Defendant

18  "Westport Insurance Corporation" ("WIC") in full under a confidential agreement

19  with intent to deprive Plaintiff of his property.

20   The Retainer Agreement (¶ 11) between Plaintiff and Defendants "I & S"

21  provided that

22       "prevailing party in any action or proceeding to enforce any provisions

23        of this agreement will be awarded reasonable attorney's fees and costs

24        **incurred in that action** or proceeding".

25  Since attorney fees had been paid by "Westport" in full, Defendant "I & S" **did not**

26  **incur** any attorney fees or cost and had no standing under the contract to double

27  dip on attorney fees against Plaintiff.

28                          **Timeliness**

4. The Complaint is timely. The State court declined to rule on the issues upon which this Complaint is based in a motion to set aside and vacate application for renewal of judgment on May 31, 2013.

The state court denied on July 16, 2013 the motion to set aside and vacate untimely *nunc pro tunc* second amended Application for renewal of the same judgment filed beyond 10 years statutes of limitation for the renewal of judgment.

# **PARTIES**

## **I. Plaintiff:**

5. Plaintiff is a resident of Los Angeles County since 1972 and resides at Redondo Beach, CA. 90277

## **II. Defendants:**

6. Defendant Iungerich & Spackman is a California Law Corporation and has its office located at 28441 Highridge Road, Suite 201, Rolling Hills Estate, California 90274-4871.

7. Defendant Russell Iungerich is an individual and has his office located at 28441 Highridge Road, Suite 201, Rolling Hills Estate, California 90274-4871.

8. Defendant Paul Spackman in as individual and has his office located at 28441 Highridge Road, Suite 201, Rolling Hills Estate, California 90274-4871.

9. Defendant Westport Insurance Corporation (hereinafter 'WIC') is a professional liability Insurance Company and has its offices at 5200 Metcalf, Overland Park, Kansas 66201.

10. Defendant Jay Brown is an individual and employee of 'WIC' and has its offices located at 5200 Metcalf, Overland Park, Kansas 66201.

11. Defendant 'WIC' is sued in its capacity as respondeat superior of Jay Brown and has its offices located at the same address at 5200 Metcalf, Overland Park,

Kansas 66201. The respondeat superior liability is based on principal/ agent relationship between Jay Brown and Westport Insurance Corporation. Jay Brown was acting under the scope of his employment which was in furtherance of business and interest of Westport Insurance Corporation.

# FOUNDATIONAL ALLEGATIONS

**Plaintiff's Background:**

12.  Plaintiff Jehan Zeb Mir, MD is a physician who became licensed to practice medicine in the State California in 1972. He has continuously held a current, unrestricted medical license in good standing from the Commonwealth of Pennsylvania since 1974.

13. Plaintiff is currently certified by American Board of Surgery since 1970 and was recertified by American Board of Thoracic Surgery in 1993 and 2003.

14. Plaintiff was trained in General Surgery at New York University Medical Center ,N.Y., N.Y. 10010 and was trained in Cardiovascular & Thoracic Surgery at Children Hospital of Los Angeles (USC), at Good Samaritan Hospital, Los Angeles California  90017 (USC) and then the University of Pennsylvania Medical Center, Philadelphia, PA.19104

15. Plaintiff honorably served in US Navy from 1968 to1972, as a Commander with 13 months tour of duty with First Medical Battalion, First Marine Division in Vietnam, as Trauma Surgeon in 1969.

**The Underlying Case;**

16. In 1985 a Gastroenterologist, Chief of staff at Charter Suburban Hospital, Paramount, California, terminated Plaintiff from the medical staff for performing a procedure of upper gastrointestinal endoscopy for which Plaintiff was fully trained and certified to perform as a thoracic surgeon and had been granted full privileges to perform this particular procedure by the hospital.

17. The procedure of endoscopy is performed by two different specialties gastroenterology and thoracic surgery. The gastroenterologist Chief of Staff charged that Plaintiff should have referred the case of an accidentally ingested quarter for endoscopic removal to him instead of personally performing endoscopy himself. He later added charges based on care of five more patients.

18. Plaintiff first succeeded at the hospital judicial review hearing in dismissal of 5 ½ charges by the Chief of Staff's handpicked friends / members of the judicial review committee finding only against Plaintiff on the Charge of not referring endoscopy patient to gastroenterologist and in reducing discipline of termination from hospital staff to 'probation'.

19. The Plaintiff then won on writ petition in dismissal of the remaining half charge of not referring patient to gastroenterologist in a writ proceeding and removal of probation and restoration of full unrestricted surgical privileges for lack of substantial evidence.

20. The Hospital then as a delaying and harassing tactic appealed to California Court of Appeals 2nd which in de-novo review also found lack of substantial evidence supporting hospital's decision. The hospital then appealed to California Supreme Court which denied petition for review.

21. The prolonged hospital and court proceedings took its toll as Plaintiff could not practice at the hospital for several years and lost income in millions of dollars. After having won on merits of the case, all that was left to prove was damages from lost income in a separate civil suit.

22. Defendant Iungerich & Spackman had successfully represented Plaintiff in the writ proceedings on fee for service basis and felt that they should be generously rewarded by a contingency fee agreement on suit for damages.

23. Plaintiff was not interested in another long drawn out legal battle with the hospital which would consume time from practice of medicine and believed that matter would be settled soon at fraction of his actual damages.

24. In order to achieve that end, before filing any Complaint against the Hospital and Physicians, Plaintiff arranged a meeting to settle with the Hospital Administrator and took along Defendant Russell Iungerich. The matter was not settled in that meeting. However, Plaintiff expected early settlement in due course of time and declined to enter contingency fee agreement and instead opted to continue to pay fee for services as he had always done before.

25. In December 1992, Plaintiff retained Defendant Iungerich & Spackman, a law Corporation to represent him against the hospital on damage suit on fee for services basis as he had always done before.

26. A fee for service retainer agreement made Defendants Iungerich and Spackman very angry and they tried to coerce Plaintiff to reconsider by excessively charging. Failing to get a response, Defendants Iungerich and Spackman in retaliation then resorted systematically, methodically and in a step by step fashion to sell out Plaintiff's interests in the case to the Defendant Hospitals and Physicians.

27. The court granted Hospital and Physicians demurrer with leave to amend within **45 days** on the cause of action for loss of prospective economic advantage. The court required facts alleging loss of income from third parties such as referring physicians and established patients and their families who resided in and around City of Paramount, California. Plaintiff immediately provided the facts to Defendant Iungerich and Spackman in order to properly amend the complaint.

28. At about 2.00 p.m. on **45th** day of the time ordered by the court to amend complaint, Plaintiff went to the law offices of IUNGERICH & SPACKMAN

located at 3500 Wilshire Boulevard, Los Angeles, CA and found out that Defendant IUNGERICH had not yet prepared or filed the amended complaint.

29. Defendant IUNGERICH AND SPACKMAN declined to properly amend the complaint as ordered by the Court despite Plaintiff's insistence to state facts required by the courts provided by him

30.Defendant IUNGERICH then handed to Plaintiff the incomplete and improperly and hurriedly drafted amended complaint and asked Plaintiff to file it at the Compton Courthouse at about 3.15 p.m. on Friday afternoon with the rush traffic already in full force .

31. Defendant IUNGERICH subjected Plaintiff to great anxiety and danger when Plaintiff had to rush at a great risk to his safety in fighting traffic to reach filing window just 5 minutes before the closing time at the Compton Courthouse.

32. Since Defendants IUNGERICH AND SPACKMAN declined to amend complaint pursuant to court's order on the cause of action for loss of **Prospective Economic Advantage** ,the Court dismissed the straight forward, most easily provable cause of action for loss of prospective economic advantage leaving most disfavored malicious prosecution cause of action for trial.

33. Defendant IUNGERICH and SPACKMAN then unsuccessfully filed frivolous writs to Court of Appeals and California Supreme Court to challenge dismissal of cause of action for loss of prospective economic advantage charging  about $ 10,000.

34. Defendants IUNGERICH and SPACKMAN routinely billed $ 15,000 to $ 20,000 every month for several months. Defendants IUNGERICH and SPACKMAN called Plaintiff to their law offices 5 days before trial and demanded advance payment  of $ 40,000 to take the matter to trial.

35. Plaintiff had always paid his bills in full and on time previously pursuant to a fee for service retainer agreement and had 30 days to pay each bill like any other provider of services.  Plaintiff told Defendants that he will pay in full at the end of month as he had always done every month previously and the bill at the end of the month may not amount to $ 40,000.

36. Plaintiff was current on his payments and no work had been done in that month since parties were waiting for trial which had been continued by stipulation. Plaintiff knowing fully that no work had been done during the month and no charges were due asked if Defendants IUNGERICH and SPACKMAN had any outstanding bills for the month such as cost and he would pay them there and then instead of waiting few more days till the end of the month to pay.

37. Defendant IUNGERICH inquired of his secretary and she informed him that the balance was $ 5000.00 which made no sense whatsoever to Plaintiff. However, Plaintiff without getting a statement and in order not to create any unpleasantness just before trial on top of Defendants insistence to get paid in advance for $ 40,000, immediately paid $ 5000.

38. On the morning of the trial, Defendants IUNGERICH and SPACKMAN handed Plaintiff a bill for $ 35,000 for the past month and coerced and extorted $ 35,000 by showing their unwillingness to cooperate by not meeting Plaintiff and his witnesses to discuss their prospective trial testimony and the case strategy.

39. Plaintiff was placed under great duress and stress as he had to borrow money from a bank in a hurry to pay Defendants off $ 35,000.

40. Defendant Hospital made an offer of $ 100,000 to settle before the start of the trial. Defendant Iungerich made a comment to hospital attorneys why hospital was offering so much money. Plaintiff had incurred attorney fees far exceeding that amount and declined.

41. Even though Defendant IUNGERICH had received the $ 40, 000 he had initially demanded still he would not give up. **He during trial announced in the open court that he was giving a Gift to Defendant Hospital and Physicians by stipulating to Defendant's motion in limine to exclude evidence of Defendant Hospital and Physicians' malice and prior similar malicious misconduct to injure him in unsuccessfully and frivolously attempting to terminate him from the hospital staff.**

42. Plaintiff requested Defendant IUNGERICH to withdraw his stipulation, he angrily declined. After the court found lack of probable cause on element of malicious prosecution cause of action, the court granted non suit case for lack of evidence of malice.

43. Defendants IUNGERICH and SPACKMAN always wanted to get even with Plaintiff for not signing a contingency fee agreement by throwing away Plaintiff's case to hospital and Physicians and that's what they finally succeeded in doing.

44. Anticipating a malpractice lawsuit and in order to support a Cross Claim on any malpractice action Defendant IUNGERICH and Defendant SPACKMAN falsely and fraudulently prepared another invoice of about $58,000 for 9 days of trial [Close to $ 7,000 a day where the retainer provided for $ 150.00 an hour rate and Defendant SPACKMAN never participated at the trial in addition to $ 40,000 they had already received.

45. An operative First Amended Complaint for attorney malpractice was filed by Plaintiff's attorney Christopher Rolin on January 6, 2001 against the Iungerich & Spackman Law Corporation and attorneys Iungerich, Spackman and their associate a recent law graduate attorney Donald Serafano as individuals. Serafano had personally done most of the pre-trial work. These defendants cross-complained for $ 58,000, plus attorney fees, cost and interest.

46. Plaintiff did not want to get caught in legal battles at further great expense of time and money and wanted to go on with his life asked his attorney Rolin to negotiate settlement of the malpractice case and Cross-Claim for attorney fees.

47. The parties agreed to mediate and a voluntary settlement conference with a professional mediator was held on June 28, 2001. Only one of three defendants Russell Iungerich showed up.

48. At the close of the conference, Westport's attorney prepared a hand written document, named "Settlement Terms" (**Not an agreement**) for settlement of malpractice case for $ 45,000 without any mention of settlement of Cross Claim of attorney fees for $ 58.000 and Plaintiff waiving defense of malpractice to Claim for attorney fees and waiving Jury Trial. The paragraph 9 of the hand written proposed agreement specifically provided that

**"A formal settlement agreement and**

**General Release shall be prepared and signed."**

49. There was nothing in the **"Settlement Terms"** that it was a "Settlement Agreement' **or it was final and binding** and not subject to further negotiations. In order to keep the mediation /negotiations open, Plaintiff signed the tentative "Settlement Terms". Defendants Spackman and Serafano were not there to agree or to sign the document.

50. The **"Settlement Terms"** did not even provide who the settling parties were and what were they agreeing to.

51. Defendant Russell Iungerich signed the "Settlement Terms" in his individual, personal capacity on his own behalf. There was no mention of Defendants Spackman, Serafano and Russell Iungerich & Spackman, A Law Corporation on the document "Settlement Terms". Neither Defendants Spackman, nor Serafano

appeared, agreed or signed 'Settlement Terms". No one signed on behalf of the
Defendant Law Corporation, including Iungerich.

52. On July 10, 2001, counsel for the Defendants prepared a draft settlement
agreement and general release along with a proposed court order and stipulation.

53. Plaintiff objected that he should not be precluded from asserting **defenses
already pled in his answer to Cross-Complaint** and **Waiver of Jury Trial.** The
Defendants modified the agreement but would not agree on the question of Jury
Trial. Plaintiff declined to sign the typed the document, "Settlement Agreement".

54. That the two co-defendants attorney Spackman and attorney Serafano who had
not been working with the law firm anymore and these two never showed up at the
settlement conference and never orally agreed or signed the tentative "Settlement
Terms". There was nothing in the agreement that provided that the agreement was
**final and binding** and there was **no mutual consent** as required in formation of
the contract as final and binding, further proven by the fact that Defendants had
later renegotiated and modified the terms of the agreement.

55. Plaintiff always believed that the hand written "Settlement Terms" was only a
tentative agreement and not final or binding. A settlement of $ 45,000 for damages
in millions of dollars in the complaint for malpractice would not have made any
sense, if Plaintiff still had to pay $ 58,000 plus attorney fees and cost with interest
for committing gross malpractice, harassment and overbilling and on top of that
waiving defense of malpractice and Jury Trial.

56. Plaintiff did not need such any 'Settlement Agreement' where all Plaintiff had
to prove at malpractice trial was that' Iungerich & Spackman' failed to amend the
Complaint for the Claim of loss of Prospective Economic Advantage and nothing
more and nothing less.

57. On September 19, 2001, Defendants successfully moved to enforce the "Settlement Terms "against all four defendants even though three of them were not parties to "Settlement Terms" and without mutuality of consent as to final and binding nature of the contract. The evidence showed that "Settlement Terms" was not final and binding because defendants had made changes to the "Settlement Terms" before negotiations broke down.

58. The court astonishingly made a factual finding without any evidence that Plaintiff *knew* the agreement was final and binding without any substantial evidence. Plaintiff was represented by attorney Rolin at the mediation and he never advised Plaintiff that the agreement was final and binding. Had he done so, he would not have signed the tentative agreement.

59. Defendants misled the court that Plaintiff was a **savvy** vexatious litigant. Plaintiff had always been represented by attorneys in all his litigations and the only cases in which Plaintiff ever had represented himself were for collection of his medical bills from hospital and insurance companies where the recovery of small amount of bill made no economic sense to pay an attorney whose bills may far exceed the amount of Plaintiff's bill and no attorney would take the case on contingency basis where insurance company's in house attorneys can drag out and drain litigation forever.

60. In one case Plaintiff retained an attorney on fee for service to represent him in a claim for $ 6,000 bill for performing emergency surgery in California Municipal Court. Plaintiff's attorney billed him $ 12,000.

61. Defendant insurance provider FHP, Inc. removed the case to federal court under provisions of ERISA. Plaintiff's attorney having not received $ 12,000, never opposed FHP summary judgment motion or showed up in federal court at the hearing on motion and instead went to Santa Barbara to play golf. The district

court granted FHP's summary judgment motion and awarded FHP, $ 24, 000 in attorney fees under ERISA.

62. Three judges of the superior court in ruling on three different motions by hospitals and insurance companies to find Plaintiff vexatious had been denied. The courts found that Plaintiff had not in *propria persona* initiated maintained, **prosecuted five cases in the proceeding seven** years which had been adversely determined to him as required by California Code of Civil Procedure § 391.(b) (1)

63. Nevertheless, the finding of Plaintiff's <u>subjective knowledge</u> was irrelevant in enforcing settlement and fell short of the law of the contract providing that there must be a **mutual consent** orally or writing by the parties and there was no mutual consent between the parties whatsoever on the issue of **finality** and **binding** nature of the agreement, particularly with three other defendants who were not even present at the mediation or signed any paper.

64. On January 27, 2003, a bench trial was held solely on the Cross-Complaint for attorney fees and the court speedily awarded attorney fees, cost and attorney fees to prosecute Cross-Complaint pursuant to retainer agreement.

65. On March 1, 2003 the court awarded the Defendants Russell Iungerich a judgment on his Cross-Complaint for attorney fees in an amount of **$ 57,840.78**; interest of **$ 26,828.63** and cost of $ 477.65 for a total amount of **$ 85,147.06.**

66. On March 19, 2003, court awarded Defendant Iungerich attorney fees in amount of **$ 15,750.00** pursuant to the Retainer Agreement .This increased the total amount of judgment to **$ 100,897.06.**

67. The "Settlement Terms "were between Plaintiff and Defendant 'Iungerich. Defendant Iungerich swiftly transferred the judgment from his name to Defendant "IUNGERICH & SPACKMAN, A Law Corporation" in an ex-parte application.

## FACTUAL BASIS FOR THE CLAIMS

68. On June 6, 2003 Defendants "I & S." filed **Writ of Execution** with the Clerk of the Los Angeles County Superior Court.

69. On May 16, 2003 Plaintiff's appellate attorney Joseph R Zamora appealed the **enforcement of settlement on the malpractice case** and did not appeal on judgment on attorney fees.

70. Defendant Iungerich and Spackman were represented on appeal by Defendant Greines, Stein & Richland and Defendant Kent L. Richland and Marc J Poster; Defendant Sandra J Smith, Jens B Koepke; Peter O Israel, Jordan Rahael; Melissa Laffin, Peggy Levenstein, Sandra M Martinez (Collectively called " **Greines** ")

71. On February 10, 2004, Defendant Iungerich & Spackman filed **Notice of Lien** with **Los Angeles County Superior Court** on **$ 45,000** settlement amount to be paid by Defendant Westport Insurance Corporation, Defendant's professional liability insurance company for their malpractice to Plaintiff.

72. On April 23, 2004 the Defendants filed Memorandum of Costs after judgment in an amount of **$ 51,028.99** for additional attorney fees for conducting debtor examination pursuant to retainer agreement.  The Defendants never requested and Court never granted any judgment on this amount and there is no judgment in the said amount on the record.

73. Defendants **filed a substandard 'opposing brief' without a single relevant supporting legal authority. Defendants improperly influenced the justices at the California court of appeals second appellate district**.

74.  On October 7, 2004, the state court of appeals in an unpublished opinion affirmed the judgment. The court enforced "Settlement Terms" for the three Nonparties to the "Settlement Terms" against California law requiring mutuality of consent or meeting of the minds of settling parties.

75. The court upheld superior court's factual finding without substantial evidence that Plaintiff subjectively knew that the agreement was final and binding without any supporting objective evidence. On the contrary, there was nothing in "Settlement Terms" about the finality and binding nature of the "terms".

76. The California court of appeal 2nd disregarded facts that if it were true that Plaintiff subjectively knew that the agreement was final and binding and he voluntarily signed the 'tentative' agreement then why would he decline to sign it later after the negotiations broke down?

77. The court of appeal declined to consider facts that if the tentative agreement was final and binding then why the second modified agreement was prepared by defendants?

78. The Court of Appeal 2nd awarded attorney fees on appeal pursuant to retainer agreement.

79. On November 5, 2004, Defendants in order to collect their judgment filed a Complaint (BC 324098) against Plaintiff in the Los Angeles County Superior Court for fraudulent conveyance in bad faith and without probable cause on 2001 sale of property against Plaintiff and the Buyer of the property where buyer of the property had nothing to do with the Defendant 'I & S' bills or its judgment against Plaintiff.

80. Defendants I & S' based their standing to sue on fraudulent conveyance based on unsatisfied judgment of $ 100.897 as of March 2003 against Plaintiff.

81.Defendants "I&S" claimed that property was undersold yet attached a copy of the valuation by Bank of America to the Complaint showing that property was sold at the comparable market value.

82. The sold property was in a highly dilapidated condition with leaking roof causing large holes in the ceilings in every room; corroded dry walls with layers of fungus, destroyed wooden floors from flooding with broken windows and destroyed exterior paint and rotted wood.

83. The real estate property sales comparable showed that during the same week exact same property in a far superior, livable condition few houses down had been sold at about the same price. **Defendants "I& S" filed with the Court Clerk Lis pen dens on the property in order to collect his debt.**

84. In defending lawsuit, the Plaintiff had to pay attorney fees for Buyer of the property who had nothing to do with Defendants 'I & S' and had bought the property at market value.

85. The Buyer of the property retained a Beverly Hills law firm to defend lawsuit while Plaintiff was represented by another law firm located in Encino, CA. Representations by separate law firms were necessary to prevent any conflict of interest between defendants.

86. On February 23, 2005 Defendants 'I & S' served by mail and filed motion for attorney fees on appeal in an incredible amount of $ **76, 536.12** for preparing one brief plus $ **372.88** for cost and in a total amount of $ **76**, 909.00. The appeal was prepared by their attorneys at Greines, Martin, Stein and Richland ( hereinafter ' GMSR') The motion was published on court's website.

87. On April 22, 2005, court granted attorney fees as requested in an amount of $ **76,909.00.**

88. On July 11, 2005 Plaintiff's attorney Zamora filed Notice of Appeal on unreasonableness of attorney fees and the same panel of the court of appeal again immediately affirmed the judgment.

89. On December 6, 2005 just before commencement of trial on fraudulent conveyance case while Plaintiff's motion for summary judgment and Buyer's motion for summary judgment were pending, Defendants I & S' having no evidence to support that the property was sold less than the market value **settled the lawsuit for $ 35.000** and to **dismiss with prejudice** the case against Plaintiff and the Buyer of the property.

90. Since Defendants 'I & S' standing to sue was based on collection of their judgment against Plaintiff, he had to pay **$ 35,000** settlement amount and all of the cost and all of the legal fees for the Buyer of the property in addition to his own.

91. Since Buyer of the property had nothing to do with 'I & S's judgment. Buyer demanded and Plaintiff complied by wiring **$ 35,000** to Buyer of the property who wired $ 35,000 to 'Iungerich and Spackman.

92. Defendant Iungerich and Spackman dismissed the case with prejudice against Plaintiff and Buyer of the property. The attorney fees for defending Buyer of the property and Plaintiff by two separate law firms cost Plaintiff over $ 100,000.

93. On May 8, 2006 Defendants 'I & S' served by mail and filed motion for attorney fees in an amount of **$ 29,954.00** for preparing brief and motion plus **$ 206.10** for cost and in a total amount of **$ 30.160.10** on the Second Appeal which was filed to challenge the unreasonableness of attorney fees for $ 76,909. The motion was published on state court's website.

94. Defendant 'I &s' were covered by their out of state professional liability insurance carrier Defendant Westport Insurance Corporation under **Policy No.: CAS055873**.

95. Defendants 'I & S' and their attorney Greines, Martin, Stein & Richland unbeknown to Plaintiff also simultaneously made a Claim for their above stated

attorney fees incurred against Plaintiff with Defendant Westport Insurance Corporation under **Claim No.: 433468.**

96. These Defendants never once disclosed to Plaintiff or to the Superior Court or the Court of Appeal about the money received or a Claim made to Defendant Westport Insurance Corp. for payment of same attorney fees for which they were vigorously prosecuting to obtain judgment and harassingly attempted to collect against Plaintiff.

97. In order to cover all basis and make any Claims or payments fool proof **Defendants 'I & S' and their attorney "Greines" entered a confidential agreement** with **Defendant Westport Insurance Corporation** to keep under a strict shroud of secrecy all payments received as payments in full from Westport Insurance Corporations.

98. Another reason for secrecy was that Defendants' were covering up evidence of unreasonableness of attorney fees charged against Plaintiff versus actually received apparently in lesser amount as payment in full for the same legal services from Defendant Westport.

99. Between April 2004 and July 2006, "GMSR"was directly paid by Defendant Westport Insurance Corporation, for all the attorney fees claimed against Plaintiff accepting Westport's payments in full for all of their bills. Not once any of these Defendants disclosed to Plaintiff or to the California state courts about receipt of such payments in order to double dip against Plaintiff without suffering any damages and to unjustly enrich themselves.

100. No Lien or 'subrogation agreement' on the any amount to be collected from Plaintiff on judgment held by "I & S" was ever filed by either Defendant Westport or "I & S and none was ever paid by Defendants " I & S " to Defendant 'Westport.

101. On the contrary on June 13, 2006, Defendant Westport Insurance Corporation paid Defendant Iungerich & Spackman $ 45,000 the settlement money for settling Iungerich's malpractice case with Plaintiff without adjusting for any money paid for attorney fees in defending appeals.

102. Failing to collect their judgment in full, after settling their case for fraudulent conveyance, Defendants 'I &S" retaliated by working in with the Torrance Police Department, Torrance, California and started a criminal investigation against Plaintiff for fraudulent conveyance on the same property which they had settled in a civil lawsuit, thus injuring Plaintiff's reputation and standing in the community.

103. On July 17, 2006 Defendant 'I & S' served by mail and filed *under penalty of perjury* **Writ of Execution** with the Clerk of the Los Angeles County Superior Court, in an amount of **$ 100,897.06** with & **33,944.33** in interest from **3/19/03 to 7/12/06** and **$ 28.03 interest per day** from the date of the application to date of the writ **without giving any credit for $ 45,000 and $ 35,000** received.   The interest of $ 33,944.33 was improperly calculated on $ 100,897.06 which included interest, thus charging interest upon interest.

104. The July 17, 2006 Writ of Execution however, correctly did not include any amount based on attorney fee judgments for **$ 77,281.88** and **$ 30.160.10** obtained against Plaintiff as appellate fees and received by Defendants Iungerich & Spackman and "GMSR" from Defendant Westport Insurance Company. This document was served by mail and published on court's website.

105. On July 19, 2006, Writ of Execution was served *by mail* on two banks. First one was served *by mail* for **Notice of Levy** on Euid E. Malm, Operations Supervisor Washington Mutual Bank, 21660 Hawthorne Boulevard, Torrance, CA 90502

106. On July 19, 2006, the second Writ of Execution was served *by mail* for levy on Evelyn Baltazar, Assistant Manager Bank of America 1603 Hawthorne Boulevard, Redondo Beach, CA 90278 and upon Plaintiff. The document was served *by mail* and published on the court's web site.

107. On March 28, 2007 Defendant 'I & S' filed *under penalty of perjury* the **Writ of Execution** with the Clerk of the Los Angeles County Superior Court, in an amount of $ 100,897.06 with & 33,944.33 in interest and $ 28.03 interest per day from the date of the application to date of the writ in a total amount of **$ 134,856.39 without giving any credit for $ 45,000 paid by Westport and $ 35,000** received by "I & S "from Plaintiff.

108. The Writ of Execution properly did not once again include any amount based on two judgments on appellate attorney fees in amounts of **$ 77,281.88** and **$ 30.160.10** obtained against Plaintiff since no such fees were due or had been received by Defendants 'I &S ' and 'GMSR' from Defendant Westport Insurance Corporation. This document was published on court's website.

109. On July 19, 2006, Writ of Execution was served *by mail* on two banks. One was for **Notice of Levy** on Euid E. Malm, Operations Supervisor Washington Mutual Bank, 21660 Hawthorne Boulevard, Torrance, CA 90502 and second was for levy on Evelyn Baltazar, Assistant Manager Bank of America 1603 Hawthorne Boulevard, Redondo Beach, CA 90278 and upon Plaintiff. The document was served *by mail* and published on the court's web site.

110. On May 14, 2010 Defendants 'I & S' *served by mail* and filed *under penalty of perjury* **Writ of Execution** with the Clerk of the Los Angeles County Superior Court, in an amount of **$ 100,897.06** with **$ 72,205.28** in interest plus **$ 28.03** interest per day from the date of the application to date of the writ once again **without giving any credit for $ 45,000 and $ 35,000** received.

111. The 2010 writ correctly did not include any amount based on two judgments on appellate attorney fees in amounts of **$ 77,281.88** and **$ 30.160.10** obtained against Plaintiff as stated above. The document was published on court's website.

112. On March 15, 2013 Defendants 'I & S' *served by mail* and filed *under penalty of perjury* with the superior court operative [1]Amended Application for Renewal of Judgment in a total amount of **$ 438,594.16**. This document was also published on court's website.

113. On March 18, 2013 Defendants "I & S" also *served by mail* and recorded *under penalty of perjury* Notice of Involuntary Lien and Amended Application for Renewal of Judgment with **the Los Angeles County Recorder's Office in an amount of $ 438,594.16. (Document # 20130403236)**

114. Defendants 'I & S' in support of Application for Renewal of judgment also *served by mail* and filed a document called **Declaration by Eleane Pang**. These documents were published on court's web site.

115. The **Declaration by Eleane Pang** contained misleading, materially false statements and omissions.

(1) Defendants "I & S" computed its interest on judgment of $ 100.897.06 as of March 19, 2003 at the rate of 10 % per annum from March 19, 2003 to April 23, 2004 (401) days for a post judgment interest in amount of $ 11,084.86. This judgment of $ 100.807.06 already included interest of **$ 26,828.63 and** cost of $ 477.6.5. The original amount of judgment was $ 57,840.00. ( Supra , *See* ¶ 79)

Defendants improperly computed interest upon interest of $ 26,828.63.

---

[1] Defendants filed Application for Renewal of Judgment on February 14, 2013 under a wrong name and in incorrect amount. On March 15, 2013 Defendants filed Amended Application for Renewal of Judgment. Amended Application superseded February 14, 2013 application for renewal which became a dead letter.

(2) Defendants "I & S" added $ 51,028.99 as Memorandum of Cost as of April 23, 2004 to a total amount of $ 151,926.05. This Memorandum of Cost was filed for separate action for collection of judgment for conducting debtor examination and was not a cost for the original judgment which already included award of cost as stated above. Defendants never obtained and the court never granted a Judgment on $ 51,028.99 and there is no judgment on court's record in an amount of $ 51,028.99 against Plaintiff.

(3) The inclusion of $ 51,028.99 was improper because the 2013 proceeding was for renewal of judgment and not for renewal of Memorandum of Cost. The Defendants 'I & S' improperly tagged the 2004 Memorandum of Cost for a separate Collection Action to the original 2003 judgment in order to hide lack of award of judgment in 2004.

(4) Defendants 'I & S' improperly charged interest at the rate of ten (10) percent on $ 51,028.99 from April 23, 2004 to February 8, 2013. [ Eight years  nine months and 16 days]

(5) The Defendants 'I & S' omitted payment of $ 35,000 on December 2, 2005 by Plaintiff to Defendants 'I & S' for settlement of collection lawsuit for their judgment against Plaintiff.

(6) The Defendants  'I & S' without crediting $ 35, 000, instead charged Plaintiff interest on the same amount at a rate of 10% per annum on this amount from December 2, 2005 to February 8, 2013. [$ 3,500 per year for period of seven (7) years and two (2) months and six (6) days.]

(7) The Defendants 'I & S' omitted payments for appellate fees received from Westport Insurance Corporation as payment in full for billings of **$76,909.00** which was paid directly to Defendants 'I & S' and its attorney 'Greines' and doubly charged Plaintiff **76,909.00.**

(8) Defendants "I & S" improperly charged interest on $ 76,909.00 at the rate of 10% per annum from May 10, 2005 to February 8, 2013. [Seven (7) years and 9 months.] The current interest amount as date of filing is $ 76,993.28

(9) The Defendants 'I & S 'omitted payments for appellate fees received from Westport Insurance Corporation as payment in full for billings of $ **30,160.10** and paid directly to Defendants 'I & S' and its attorney 'Greines' and doubly charged against Plaintiff.

(10)     Defendants 'I & S' improperly charged interest on $ 30,160.10 at the rate of 10% per annum from June 13, 2006 to February 2013. The current interest amount is $26,891.20

(11)     Defendants 'I & S' illegally credited $ 45,000 received on June 13, 2006 by applying first to the accrued interest which had not yet been awarded by court, instead of first applying the $ 45,000 received to the principal amount of the original judgment of $ 57, 840 in violation of California Code of Civil Procedure § 685.030(c).

(12)     Defendants 'I & S' improperly charged interest upon interest in the interest amount of $ 179,509.01 from March 19, 2003 to February 8, 2013, The March 19, 2003 judgment already included interest of **$ 26,828.63**.

116.  On March 21, 2013, Plaintiff moved to set aside and vacate renewal of judgment on the following grounds:

(i)     Defendants 'I & S' did not credit $ 35,000 received as settlement of collection action on the judgment, instead charged interest on this amount since December 2, 2005. Plaintiff supported the facts by declaration.

(ii)     Defendants 'I & S' have improperly compounded interest.

(iii)     Defendants 'I & S' improperly applied payment of $ 45,000 received to the accrued interest instead of to the principal in violation of California Code of Civil Procedure § 680.300.

(iv) Defendants 'I & S' did not have a judgment on $ 51,028.99 on memorandum of cost. Defendants were renewing judgment and not memorandum of cost. Defendants had improperly included that amount in Renewal of Judgment

(v) Defendants 'I & S' have improperly charged interest at the rate of 10% per annum since April 23, 2004 on $ 51,028.99.

(vi) Defendants 'I & S' and their attorney 'GMSR' received from Westport Insurance Corporation payments in full for attorney fees in amounts of $ 76,909.00 and $ 30,160.10 and have improperly included these amounts in Renewal of Judgment thus double dipping and unjust enrichment.

(vii) Defendants improperly charged interest on two attorney fees for $ 76,909.00 and $ 30,160.10 since 2005 and 2006 respectively, received by 'I & S' and 'Greines' thus impermissibly engaged in **'double dipping'** and **unjust enrichment**.

(viii) Plaintiff supported all these facts by declaration.

117. On May 16, 2013 in Opposition **Defendants** 'I & S' **would not admit or deny that Defendants had received attorney fees from Defendant Westport Insurance Corporation.** Instead, contended that prior judgments of attorney fees were res-judicata despite defendants having **fraudulently concealed payments** and preventing trial on merit and continuing to conceal from the Plaintiff and the state court. All they wanted was Plaintiff's money without suffering any damages.

118. Defendants would not controvert the facts alleged in the Plaintiff's Declaration of payment of $ 35,000 by denying receipt of payment, yet instead contented that Plaintiff's declaration was not supported by documents like settlement agreement, cancelled check or wire transfer receipt.

119. Defendants denied compounding interest. Defendants requested court to enter a renewal of judgment in different amount if the amount was incorrect pursuant to

California Code of Civil Procedure § 683.170(c). [Except that the ten year statutes for renewal of judgment had already expired]

120. On **May 28, 2013** Plaintiff in Reply to Defendants Opposition to Motion to vacate renewal of judgment contended that two judgments on attorney fees are subject to collateral attack under doctrine of **equitable estoppel** because Defendants committed **extrinsic fraud** by concealing from Plaintiff and the Court the receipt of payments from the Defendant Westport Insurance Corporation.

121. That the Defendants 'I & S' **breached fiduciary duty** to Plaintiff and defendants 'I & S' **breached State Bar of California's Rules of Professional Conduct** by misleading court by artifice or false statement of fact or law.

122. That Defendants 'I & S' had duty to speak truth or make full and complete disclosures and any concealment of facts was fraud. (*Citations omitted*)

123. That the Defendants 'I & S had brought a brand new action of Renewal of Judgment **claiming interest** on the two attorney fee judgments totaling $ 107,069.10 since February 23, 2005 and May 8, 2006. Defendants claimed interest which had not been previously awarded by the court and was subject to direct attack.

124. That court can only correct and enter a different amount *if there is miscalculation* under California Code of Civil Procedure § 683.170 (c). There was no miscalculation since Defendants continued to contend that the amounts stated in the amended application for renewal of judgment were accurate and correct and continued to blatantly conceal from the court the payments they had received from Plaintiff and Westport. [**$35,000; $76, 909; $ 30,160.10**]

125. That the court had no jurisdiction to correct a grossly false, fraudulent and perjured application for renewal of judgment and enter a new judgment.

Defendants declined to come clean. That unless Defendants deny or controvert the facts alleged in Plaintiff's Declaration, the burden did not shift upon Plaintiff to supplement with documentary evidence for the payment of $ 35,000, such as settlement agreement, cancelled check or wire transfer receipt.

126. Plaintiff produced **Declaration** by Buyer of property with documentary evidence of bank statements and evidence wire transfers in an amount of $ 35,000 from Plaintiff to Buyer and then transferred by wire $ 35,000 few days later from Buyer directly to Defendants 'I & S' bank account.

127. Plaintiff provided Declaration that he was informed by Claim Specialist Steve King at Defendant Westport Insurance Corporation that between April 2004 and July 2006, 'GMSR' was directly paid by Defendant Westport on two Claims in the amount of $ 76,909 and $ 30, 160.10 for attorney fees. That such information will be released once subpoena was served.

128. That on May 24, 2013 subpoena for release of documents were personally served by registered process server. Mr. King informed that documents were ready and will be released as soon as Defendant Westport's Executive and in-house attorney Defendant Jay Brown gave the go ahead.

129. That Plaintiff spoke to **Defendant Jay Brown**, agent / employee for Defendant Westport who informed Plaintiff that he did not intend to release documents that he did not have enough time, and claimed confidentiality of agreement between Westport, "GMSR' and Defendants 'I & S' and also claimed attorney-client privilege. That the California law did not apply.

130. Plaintiff informed **Defendant Jay Brown** that there was no attorney-client relationship between Defendants 'I & S' and Westport. That attorney J. Brown declined to discuss matter any further with Plaintiff. Plaintiff attached copy of subpoena and proof of service to his Declaration.

131. On May 31, 2013, **state court GRANTED Plaintiff's motion to vacate judgment** and found that Defendants incorrectly applied $ 45,000 first to interest instead of to the principal amount as pursuant to California Code of Civil Procedure § 685.030 (c) providing

    (c) "If a money judgment is partially satisfied pursuant to a writ under this title or is partially satisfied, interest ceases to accrue as to the part satisfied on the date the part is satisfied."

132. The state court **did not mention in its Ruling or rule** or **credit on payment for attorney fees** received by Defendants 'I & S' and their attorney 'GMSR' from Defendant Westport on Defendant's claims of attorney fees of $ 76,909 and $ 30,160.10  and also obtained against Plaintiff in a court judgment, despite **extrinsic fraud, double dipping and unjust enrichment.**

133. The state court **did not mention in its Ruling or rule on the interest** charged by Defendants on $ 76, 909 since February 23, 2005 and on $ 30,160 since May 8, 2006 at the rate of ten percent per annum to February 8, 2013 which were new claims, subject to direct attack.

134. The state court **did not mention in its Ruling or rule on $ 51,028.99** with interest since April 23, 2004 for which there was no entry of judgment by the court.

135. The state court **did not rule on $ 35,000 received by Defendants from Plaintiff** in collection case on December 2, 2005 because it was a different litigation.

136. The state **court similarly did not mention in its Ruling or rule on the interest received by Defendants on $ 35,000** and the interest received at the rate of ten percent per annum since December 2, 2005 the date of the payment.

137. The state court reduced the Renewal of Judgment amount requested by Defendants 'I & S' from **$ 438,594.16** to **$ 408,610.60.** The state court against facts and law ordered entry of renewal of judgment ***nunc pro tunc*** to February 14, 2013 prior to expiration of ten years statutes of limitation for renewal of judgment. The court had not issued any order on February 14, 2013, let alone a clerically incorrect order which needed to be corrected ***nunc pro tunc*** to February 14, 2013. The court had no jurisdiction to correct ***nunc pro tunc*** any judicial errors.

138. On June 3, 2013 Defendants 'I & S' served Notice of Ruling on Motion to Vacate Judgment upon Plaintiff.

139. On June 6, 2013 Plaintiff made motion for attorney fees as a prevailing party succeeding in reduction of judgment from **$ 438,594.16** to **$ 408,610.60**.

140. On June 11, 2013 Plaintiff filed his proposed judgment and **objected to Defendant's judgment** on the ground **that court had no jurisdiction to enter judgment *nunc pro tunc*** (*Citations*). That the Defendants 'I & S' intentionally caused delay in entry of renewal of judgment beyond ten years by intentionally filing a false, fraudulent and perjured application for renewal of judgment just 4 days before expiration of ten year statutes of limitation for renewal of judgment on March 19, 2013 in order to catch Plaintiff off guard, precluding him to assert any objections.

141. That February 14, 2013 application was under a different name and in incorrect amount and was null and void by filing of the amended application for renewal of judgment.

142. That Defendants 'I & S' had no valid application filed during ten year period because their March 15, 2013 Application for Renewal of Judgment had been set aside and vacated as incorrect.

143. On June 13, 2013 Defendants 'I & S' filed **Second Amended Application for Renewal of Judgment *nunc pro tunc* to February 14, 2013** after fraudulently altering **California Judicial Council Form EJ-190** (revised Jan.1, 2002)

144. Defendants 'I & S' fraudulently added words **SECOND AMENDED and NUNC PRO TUNC** to the official Caption of the California Judicial Council Form artfully in the same typeface that it looked real and official document prepared by California Judicial Council. These Judicial Council Forms are prepared after a great deal of deliberations, diligence and consultations with all the state superior court judges and process may take several months to years. The Defendants by stroke of a pen created a brand new generation of judicial council forms cut short Judicial Council's work.

145. Defendants 'I & S' did that in order to mislead the Court Clerk in believing that *nunc pro tunc* was a regular and a routine matter and a lawful act.

146. Based upon these misrepresentations, Clerk of the Court made notations "nunc pro tunc dated 2-14-13 by court order filed May 31, 2013" on the left margin of the Second Amended Application.

147. On June 17, 2013 Plaintiff filed Amended Objections to Judgment that ten year period for renewal of judgment cannot be tolled. (*Citations*) That judgment was not enforceable beyond ten years period. (*Citation*) and objected to court not considering payment of $ 35,000 and payments made by Westport Insurance Corporation.

148. On June 20, 2013, state court improperly influenced by Defendants ordered that Defendants 'I & S' shall file Second Amended Application for and Renewal of Judgment in the total sum of $ 408,610.60 *nunc pro tunc* to February 14, 2013

149. On June 24, 2013, Plaintiff made a motion to strike Second Amended Application for Renewal of Judgment on the ground Defendant had no standing to file Second Amended Application to Renew Judgment past ten years.

150. That Defendants **did not serve Notice** of Second Amended Application for Renewal of Judgment pursuant to California Code of Civil Procedure § 683.160 that Notice was mandatory and no writ could be issued nor may any enforcement proceedings be commenced to enforce judgment.

151. That the **Second Amended Application was incorrect** for not crediting $ 35,000 with interest charged for over 8 years and charging attorney fees in amount of $ 77,909 and $ 30,160.10 and with interest on these two amounts since 2005 and 2006 respectively.

152. That the Second Amended Application was untimely pursuant to California Code of Civil Procedure § 683.020, the judgment was not enforceable and ten year period cannot be tolled (*Citation*). The judgment was also untimely under California Code of Civil Procedure § 683.130. (*See Law Review Commission comments (Dearing Annotated)* on CCP § 683.110…judgment if not renewed within ten years after entry of judgment, the judgment becomes unenforceable)

153. On June 24, 2013 Plaintiff requested judicial notice of

(1) Judicial Council Form-EJ -190, which had been corrupted by Defendants.

(2) Complaint filed by Defendant Iungerich & Spackman (BC 324098; *Iungerich v Mir*) filed in November 2004 for fraudulent conveyance.

(3) Settlement Agreement filed by Defendant Iungerich and Spackman in support of Request to continue hearing on summary judgment in the matter of *Iungerich v Mir* ( BC 324098)

154. On June 24, 2013 Plaintiff also filed proof of service on Westport for service of Subpoena for record of payments to 'GMSR' and Defendants 'I & S.

155. On July 1, 2013, Defendants filed proof of service of Notice of Second Amended Application for Renewal of Judgment *nunc pro tunc* to February 14, 2013.

156. On July 2, 2013 Defendants filed Opposition to Plaintiff's motion for attorney fees and Opposition to Plaintiff's motion to vacate Second Amended Application for Renewal of Judgment on the ground that Plaintiff did not produce Settlement Agreement on *Iungerich v Mir* (BC 324098) for fraudulent conveyance lawsuit for which 'I&S' had received $ 35,000 in advance of hearing on first motion to set

aside and vacate March 15, 2013, Application for Renewal of Judgment. That the June 24, 2013 motion was a motion for reconsideration.

157. Defendants 'I & S' boldly and brazenly asked court to reconsider its May 31, 2013 Ruling correcting renewal of judgment and insisted that the amount on their March 15, 2013 First amended application for renewal of judgment was correct which would have the effect of ending any controversy about untimeliness of the renewal of judgment.

158. On July 10, 2013 Plaintiff filed Reply to Defendants 'I & S''s Opposition to motion to vacate Second Amended Application. That the Plaintiff did not file any motion for reconsideration. The motion to vacate each and every Application for Renewal of judgment was authorized by law.

159. On July 10, 2013 Plaintiff filed objections to Defendant's Request for Judicial Notice.

160. On July 16, 2013 court denied Plaintiff's motion for attorney fees and denied motion to vacate second amended application *nunc pro tunc* to February 14, 2013. The court **declined to discuss the grounds or rationale or cite any authority for *nunc pro tunc* order**. The court denied Plaintiff's request for judicial notice of 'I & S' fraudulent conveyance complaint stating his standing to sue based on judgment against Plaintiff and wire transfer evidence or bank statements for payments of $ 35,000 by Plaintiff, the settlement agreement in fraudulent conveyance case, the proof of wire transfer to 'I&S' in the matter of *Iungerich v Mir*. (BC 324098)

161. On July 17, 2013Defendants 'I & S' *served by mail* and filed **NOTICE OF INVOLUNTARY LIEN** against Plaintiff in an amount of $ **408,610.60** with County of Los Angeles, Registrar-Recorder/County Clerk

162. Defendants prepared attached a corrupted document **Second Amended Application for and Renewal of Judgment *Nunc Pro Tunc*** to February 14, 2013, certified under Penalty of Perjury.

163. That was false and fraudulent because Defendants 'I & S' had filed an Amended Application on March 15, 2013 which superseded February 14, 2013 Application for Renewal of Judgment made out in the wrong name and in the wrong amount filed by Defendants.

164. The *nunc pro tunc* orders are authorized by law for court to correct its clerical, non-judicial errors and not as subterfuge to allow parties to file statutorily untimely complaints or applications for renewal of judgment.

165. On January 29, 2015 Court of Appeal found that *nunc pro tunc* order was improper but affirmed the judgment anyway. The court did not consider or rule on issues of double dipping on payments of $ 76,909 with interest and $ 30, 160.10 with interest since there was no ruling by the state court. The court of appeal found Plaintiff did not meet his burden as debtor to show (*citation*) that Defendant 'I &S' received $35,000. These issues now form the basis of the Complaint before this Court.

## FIRST CLAIM

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RIGHTS
## (42 U.S.C. § 1981)

Plaintiff incorporates by reference paragraph 1- 165 of this Complaint, re-alleges and alleges:

166. Under 42 U.S.C. § 1981, Plaintiff irrespective of his **ethnicity**, East Indian-Pakistani race, national origin from Pakistan and Muslim religion is entitled to equal rights within the jurisdiction of the United States in every State and Territory to make and enforce contracts including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of his person and property unimpaired by nongovernmental discrimination and impairment under color of State law.

167. That the Defendants had known Plaintiff for the past 30 years had personally knew that Plaintiff was of Pakistani origin, ethnicity and race. Defendants motivated by discrimination against Plaintiff based on his ethnicity, [2]race and in retaliation for 9/11 incident based on his Muslim religion and origin from Pakistan **conspired to commit** the acts alleged in here to interfere with right to make contracts and enjoy of all benefits, privileges, terms and conditions of contractual relationship to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of his person and property.

168. On December 19, 1992, Plaintiff entered a contract with Defendants 'I & S' to provide legal services competently and honestly without any mental reservations and **to charge reasonable fees** within the provisions of California State Bar Rules of Professional Conduct.

169. The paragraph 11 of the Retainer Agreement between Plaintiff and defendants "I & S" provided

> "The prevailing party in any action or proceeding to enforce any provision of this agreement will be awarded **reasonable attorney's fees** **and cost incurred** in that action or proceeding.."

170. Defendants 'I & S' breached the contract by charging excessively and deliberately losing the case against Charter Suburban Hospital.

171. Defendant 'I & S', Defendant Jay Brown and 'Westport' interfered with Plaintiff's right to make and enforce a valid retainer agreement protecting his interests.

172. Defendant 'I & S', Defendants Jay Brown 'Westport' as malpractice carrier for 'Defendant 'I & S' improperly influenced the state court judge and obtained an order to enforce tentative "Settlement Terms" to three non-parties to mediation or 'Settlement Terms" injuring Plaintiff's right to knowingly make a purposeful and equitable contract. By doing so, Defendants injured Plaintiff's right to jury **trial**

---

[2] The U.S. Department of Census and EEOC classify persons from Pakistan and India as ASIANS and belong to the protected class.

and employ **defense of malpractice of** not amending complaint to counter-claim for attorney fees.

173. Defendants ' I & S' and Westport filed a substandard Appellees Brief in opposition to Plaintiff's appeal" to California state court of appeals 2nd on state superior court's order enforcing "Settlement Terms".

174. Defendants 'I & S' and 'Westport' further interfered with Plaintiff's contractual rights by series of deliberate acts exerting corrupt influence on the justices of the California Court of Appeal 2nd outside the confines of the courtroom.

175. The California court of appeal 2nd against California law requiring mutuality of consent or meeting of the mind in formation of a contract made a facially incorrect decision by enforcing "Settlement Terms" in favor of three non-parties who never showed up at the mediation or agreed to anything.

176. Defendants 'I & S' further interfered with Plaintiff's contractual rights by **billing excessively** in amounts of **$ 76,909** and **$ 30,160.10** for two appeals.

177. **Between April 2004 and July 2006**, Defendants 'I & S' and its attorney 'GMSR' received payments from Defendant 'Westport' on two appeals as payment in full while at the same time they were prosecuting and obtaining judgments against Plaintiff.

178. Defendants 'I & S', Defendant Jay Brown and ' WIC' fraudulently concealed from Plaintiff and court the payments for attorney fees on two appeals received by Defendants 'I & S' and their attorney 'GMSR' from Defendant 'WIC' as payments in full.

179. By these acts Defendant 'I & S', Defendants Jay Brown and 'WIC' interfered with Plaintiff's contractual rights under paragraph 11 of the Retainer Agreement with Defendant "I & S" as stated above providing

> "The prevailing party in any action or proceeding to enforce any provision of this agreement will be awarded **reasonable attorney's fees and cost incurred** in that action or proceeding.."

180. First fees charged by attorney 'GMSR' were not reasonable. Secondly **Defendant 'I & S' had not incurred any fees** because fees had been paid by Defendant 'WIC' directly to 'GMSR' which accepted such payments in full. Defendant 'I & S' had no basis to charge same attorney fees against Plaintiff.

181. There was no mutuality of consent in the agreement for Defendant 'I & S' to **double dip**, to **get unjustly enriched** or employ **collateral source rule**. Defendant 'I & S' had no contractual grounds to charge attorney fees which Defendants 'I & S' had not incurred or owed to anyone or had suffered any damages.

182. Defendants 'I & S' and Defendant Jay Brown in order to deprive Plaintiff of his property conspired to enter a '**confidential agreement**' not to disclose the payments received by them to anyone.

183. On **December 6, 2005** Defendant "I & S "reached a settlement agreement and received $ 35,000 for settlement of fraudulent conveyance lawsuit against Plaintiff to collect on his judgment.

184. On **June 13, 2006** Defendant "I& S" levied and received $ 45, 000 which Defendant "Westport" had agreed to pay Plaintiff for settlement of legal malpractice lawsuit against "I & S".

185. On **July 17, 2006** Defendants "I & S" in order to deprive Plaintiff of his property filed under *penalty of perjury* a false and fraudulent Writ of Execution with the Clerk of the state superior court in an amount of **$ 100,897.06** by not crediting **$ 80,000** received from Plaintiff as of the dates of receipts of payments.

186. In order deprive Plaintiff of his property Defendants "I & S" improperly calculated interest upon interest.

187. By not crediting $ 80,000 and applying this amount to the principal amount of the judgment of $ 57, 840. Defendant "I & S" violated of California Code of Civil Procedure § 685.030(c).[If a money judgment is partially satisfied pursuant to a

writ under this title or is partially satisfied, interest ceases to accrue as to the part satisfied on the date the part is satisfied.]

188. Defendants "I & S" breached contract by receiving money and not crediting.

189. On March 28, 2007 Defendants "I & S" in order to deprive Plaintiff of his property filed *under penalty of perjury* a false and fraudulent Writ of Execution with the Clerk of the state superior court in an amount of $ 134,856.39 [$ 100.897, $ 33,944.33 in interest, $ 28.03 in cost] without crediting $ 80,000 received from Plaintiff as of the dates of payments to the principal amount of judgment and ceasing interest on the amount paid.

190. On May 14, 2010 Defendants "I & S" in order to deprive Plaintiff of his property filed *under penalty of perjury* a false and fraudulent Writ of Execution with the Clerk of the state superior court in a total amount of **$ 173,130.37** [$ 100,897.06, $ 72,205.28 in interest, $ 28.03 in cost] without crediting $ 80,000 received from Plaintiff as of the dates of payments and calculating interest upon interest.

191. On March 15, 2013 Defendant Iungerich & Spackman in order to deprive Plaintiff of his property *served by mail* and filed *under penalty of perjury* with the superior court operative Amended Application for Renewal of Judgment in a total amount of **$ 438,594.16**.

192. On March 18, 2013 Defendants "I & S" in order to deprive Plaintiff of his property *served by mail* and recorded *under penalty of perjury* Notice of Involuntary Lien and Amended Application for Renewal of Judgment with **the Los Angeles County Recorder's Office in an amount of $ 438,594.16. (Document # 20130403236)**

193. In support of false liens and false Amended Applications for Renewal of Judgment Defendants "I& S" also filed a false declaration *under penalty of perjury* by Defendant Eleane Pang.

194. Defendants 'I & S' in order to deprive Plaintiff of his property excluded into renewal of judgment an amount $ **35,000** received from Plaintiff and **instead charged interest on $ 35,000** received from December 6, 2005 to March 15, 2013.

195. Defendants improperly included on an amount of $ 51, 028.99 as memorandum of costs without any prior judgment on this amount and improperly included $ 51,028.99 into the judgment with interest at the rate of ten (10) percent since from April 23, 2004 to February 8, 2013. [Eight years nine months and 16 days]

196. Defendants "I & S" fraudulently included into the Application for Renewal of judgment attorney fees in an amount of $ 76,909 and $ 30.160.10 received by Defendants 'I & S' and  their attorney 'GMSR' on two appeals from Defendant 'WIC' and charged interest at a rate of ten percent on these two attorney fees since April 22,2005 and May 8,2006 to February 13 2013 respectively.

197. When Plaintiff inquired of and subpoenaed records of payments by Defendant "WIC" and Defendant Jay Brown, to "Defendant "I & S", and their attorney 'GMSR', **these Defendants conspired with Jay Brown not to provide any information**.

198. Defendant Jay Brown declined on the grounds that Defendants 'I &S' and their attorney 'GMSR' had a confidential agreement with 'WIC'.

199. As a direct result, Plaintiff could not meet his burden under California law to present the evidence of double dipping to the state court and as a direct result suffered damages.

200.  The state court never assumed jurisdiction or ruled on this issue of attorney fees received by 'GMSR' and 'I & S' from Defendant 'WIC' for lack of evidence. Defendant 'I & S' included these amount ($ 76,909 and $ 30, 160.10) with interest since 2005 and 2006 respectively into the judgment of **$ 408, 610.60**.

201. The State court did not credit Plaintiff $ 35, 000 with interest at the rate of ten (10) percent since December 2, 2005 to February 8, 2013 charged by Defendants "I

& S" for the same reason that Plaintiff did not meet his burden and provided enough evidence of payment.

203. As a direct result and proximate to acts of Defendants 'I &S', 'Brown' and 'WIC' in interfering in the right to make and enforce contract by concealing evidence from the state court and Plaintiff of payments received from Defendant 'Westport ' and  payments received from Plaintiff thus preventing state court judge to assume jurisdiction and  to rule on the issues presented and allowing filing of untimely Amended Application *nunc pro tunc*  to a date earlier than ten years statutes of limitations for renewal of judgment, Plaintiff has suffered damages in excess of $ 500.000.

## SECOND CLAIM

### (Extrinsic Fraud)

Plaintiff incorporates by reference paragraph 1- 203 of the Complaint, re-alleges and alleges:

204. Defendants 'I & S', ' Brown' and 'WIC' did not disclose to the Court or the Plaintiff about the money received from Defendant Westport Insurance Corporation thus preventing trial on merit on Defendants' 'I & S' two motions for attorney fees.

205. Defendant 'Brown' disobeyed Subpoena for Production of Documents.

206. Defendants ' I & S' in state court proceeding never once admitted or denied that they received payments from Defendant Westport Insurance Corporation and thus stonewalling the entire judicial process and improperly obtained judgments.

207. Plaintiff was prevented **by** trick, artifice or other fraudulent conduct from fairly presenting his claim or defenses or introducing relevant and material evidence. Consequently the state court never ruled on issues presented here in this complaint as follows.

208. As a direct result and proximate to the Defendants concealing evidence and preventing trial on merit and corrupt influence on courts Plaintiff was damaged in excess of $ 500,000.

### THIRD CLAIM

### RACKETEER INFLUENCED and CORRUPT ORGANIZATION ACT
### (18 U.S.C. § 1964 (c))

Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1- 208 of the Complaint as if fully set forth herein and in-corporates by reference and alleges:

## *The Enterprise:*

209. At all relevant times the Iungerich & Spackman, A Law Corporation is an Enterprise within the meaning of 18 U.S.C.A § 1961(4) and the individual Defendants Russell Iungerich, Paul Spackman were members of the Enterprise and co-conspirators.  The Enterprise and these individual defendants are "**persons**" within the meaning of RICO, 18 U.S.C. §§ 1961 (3) and 1962(c).

210. At all relevant times the Westport Insurance Corporation is an Enterprise within the meaning of 18 U.S.C.A § 1961(4) and the individual Defendant Jay Brown is a member of the Enterprise and a co- conspirator. The Enterprise and Defendant Jay Brown are a "**person**" within the meaning of RICO, 18 U.S.C. §§ 1961 (3) and 1962(c).

211 At all relevant times, these enterprises was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO 18 U.S.C. § 1961 (c). The affecting interstate commerce is affected as these Defendants provide services or insurance coverage to out of state clients well within the language of Section 1962(a) and receives insurance payments from out of state clients and insurers.

212. The**se Enterprises** employ attorneys, paralegals to represent the interests of the clients and all these individual defendant co-conspirators formed an '**association in fact**' for the purposes of defrauding Plaintiff of over $ 500,000.

213. The Defendant co-conspirators, agents, employees did unlawfully, willingly and knowingly conduct and participate, conspire with one and another either directly or indirectly in the conduct of the affairs of the described 'Enterprise' through a pattern of racketeering activity by committing two racketeering acts within ten years of in violation of 18 U.S.C.S. § 1961 (5) and 18 U.S.C.S § 1962 (c) and (d).

214. These individual defendants who generate illegal revenue for the Enterprises are separate and distinct from the Enterprises.

215. These attorneys provide illegal business to 'Enterprise' by frivolous, unnecessary and duplicative services resulting in excessive over billing to generate fraudulent revenue for the 'Enterprises".

216. The defendant Westport Insurance Corporation provided protection to the Defendants 'I & S' to cover up payments made to these Defendants so that they can deprive property by double dipping claims and obtaining judgments against Plaintiff irrespective of merit.

217. This racketeering activity of these 'Enterprises' differs from other regular activity of maintaining and conducting the affairs of law firms in maintaining professional legal staff, legal representations, advertising, paying salaries, bonuses, bills and rents.

## *The Conduct*

218. At All relevant times, individual Defendants in the conduct of an Enterprise affairs, acted through a pattern of racketeering activity within meaning of 18 U.S.C § 1961 (5), in violation of RICO, 18 U.S.C. § 1962(c).

## *PATTERN OF RACKETEERING ACTIVITY*

219. Defendants engaged in a pattern of racketeering activity of more than two predicates within the ten year period, with continuity and relationship among the predicates and to the 'Enterprise' in violation of 18. U.S.C.S. § 1961 (5) are included as fully discussed below

### *PREDICATE NO.: 1*

### (**Mail Fraud # 1**)

### By Defendant 'I& S', 'WIC' and 'BROWN'

220.  On or about February 23, 2005 Defendants ' I&S' served by mail and filed Notice of Motion and Motion for attorney fees in an amount of  $ 77, 281.88 without disclosing to the Court or to the Plaintiff that Defendants were paid or about to be paid by Defendant Westport Insurance Corporation. That the Defendants 'I & S' had not incurred any attorney fees or had suffered any monetary damages and no attorney fees were due from Plaintiff. Defendants conspired to hide such information .Based on this lack of disclosure, Defendants misled the court and Plaintiff. As a direct result on April 22, 2005, Defendants obtained a judgment in the said amount.

221. Defendants (1) having devised or intending to devise a scheme to defraud Plaintiff (2) used mail for the purpose of executing, or attempting to execute, the scheme. Defendants committed mail fraud.

222. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **mail fraud** in violation of 18 U.S.C.A §1341, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO.: 2*

### (**Wire Fraud**)

### By Defendant 'I& S','WIC' and 'BROWN'

223. On or about February 23, 2005 Defendants' 'I & S' motion for attorney fees and cost in an amount of $ 77, 281.88 was electronically posted court's website for public access. The Notice of Motion and Motion for attorney fees did not disclose to the Court or to the Plaintiff that Defendants were paid or about to be paid by Defendant Westport Insurance Corporation after conspiring not to disclose information. That the Defendants had not suffered any monetary damages and no attorney fees were due from Plaintiff.

224. Based on concealment, Defendants misled the court and on April 22, 2005, Defendants obtained a judgment in the said amount. Such Judgment was placed on Courts Website for public access and for subsequent collection purposes.

225. The defendants voluntarily and intentionally devised or participated in a scheme to defraud Plaintiff out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used.

226. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **wire fraud** in violation of 18 U.S.C.A §1343, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO.: 3*

### **(Mail Fraud)**

### **By 'I& S', 'WIC' and 'BROWN'**

227. On or about May 8, 2006, Defendants "I & S" served by mail and filed Notice of Motion and Motion for attorney fees in an amount of $ 29,954.00 and cost in an amount of $206.10 without disclosing to the Court or to the Plaintiff that Defendants were paid or about to be paid by Defendant Westport Insurance Corporation as payment in full. That the Defendants 'I&S' had not incurred any attorney fees and had not suffered any monetary damages and no attorney fees were due from Plaintiff.

228. Based on this concealment, Defendants misled the court and on June 13, 2006, Defendants obtained a judgment in the said amount.

229. Defendants (1) having devised or intending to devise a scheme to defraud Plaintiff (2) used mail for the purpose of executing, or attempting to execute, the scheme. Defendants committed wire fraud

230. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **mail to commit fraud** in violation of 18 U.S.C.A §1341, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO. 4*

### **(Wire Fraud)**

### **By 'I & S', 'WIC' and 'BROWN'**

231. On or about May 8, 2006, the Defendant's motion for attorney fees and cost in an amount of $ 29,954.00 and cost of $ 206.10 was electronically posted court's website for public access. The Notice of Motion and Motion for attorney fees did not disclose to the Court that Defendants were paid or about to be paid by Defendant Westport Insurance Corporation as payment in full. That the Defendants had not suffered any monetary damages and no attorney fees were due from Plaintiff.

232. Based on this lack of disclosure to the Plaintiff and the Court, Defendants misled the court and on June 13, 2006, Defendants obtained a judgment in the said amount. Such Judgment was placed on Courts Website for public access and for subsequent collection.

233. The defendants voluntarily and intentionally devised or participated in a scheme to defraud Plaintiff out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used.

234. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **wire fraud** in violation of 18 U.S.C.A §1343, Plaintiff was deprived of his property and injured in his business.

## *PREDICATE NO.5*

### (Mail Fraud)

### By Defendant 'I& S'

235. On or about March 28, 2007, Defendants 'I &S' served by mail and filed Writ of Execution for money judgment in an amount of **$ 134,856.39** without disclosing to the Court or to County Recorder's Office that Defendants had been paid amounts of $45,000 and $ 35,000.

236. Defendants writ of execution was false for not crediting Plaintiff in an amount of $ 80,000 to the principal amount of judgment as was required under Column 14 of the California Judicial Council Form EJ-130 instead Defendants additionally charged interest on that amount. Defendants by concealing true facts misled the court and the County Recorder's Office and obtained Writ of Execution in the said amount.

237. Defendants (1) having devised or intending to devise a scheme to defraud Plaintiff (2) used mail for the purpose of executing, or attempting to execute, the scheme.

238. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **mail fraud** in violation of 18 U.S.C.A §1341, Plaintiff was deprived of his property and injured in his business.

## *PREDICATE NO.: 6*

### (Wire Fraud)

### By 'I & S'

239. On or about March 28, 2007, the Defendant's Writ of Execution in an amount of $ 134,856.39 was posted on the Court's website for public access and for collection

purposes without disclosing payments of $ 80,000 and instead charged interest on that amount.

240. The defendants voluntarily and intentionally devised or participated in a scheme to defraud Plaintiff out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used.

241. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of wire **fraud** in violation of 18 U.S.C.A §1343, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO.7*
### (Mail Fraud)
### By 'I & S'

242. On or about April 16, 2010, Defendants served by mail and filed Writ of Execution for money judgment in an amount of $ 173,130.37 which included $ 72,205.28 in interest for collection purposes concealing from the Court or to County Recorder's Office that Defendants had been paid in amounts of $45,000 and $ 35,000.

243. Defendants without crediting Plaintiff in an amount of $ 80,000 as required under Column 14 of the California Judicial Council Form EJ-130 instead additionally charged interest on that amount. Defendants by concealing true facts misled the court and the County Recorder's Office and obtained Writ of Execution in the said amount.

244. Defendants (1) having devised or intending to devise a scheme to defraud Plaintiff (2) used mail for the purpose of executing, or attempting to execute, the scheme.

245. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **mail fraud** in violation of 18 U.S.C.A §1341, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO.: 8*
### (Wire Fraud)
### By 'I & S'

246. On or about April 14, 2010, the Defendant's Writ of Execution in an amount of $ 173,130.37 was posted on the Court's website for public access and for collection purposes without disclosing or crediting payments of $ 80,000 and instead charged interest on that amount.

247. The defendants voluntarily and intentionally devised or participated in a scheme to defraud Plaintiff out of his money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used.

248. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **mail fraud** in violation of 18 U.S.C.A §1343, Plaintiff was deprived of his property and injured in his business.


### *PREDICATE NO.9*
### (Mail Fraud)
### By 'I & S'; 'WIC' and Jay Brown

249.  On February 14, 2013, the Defendants served by mail and filed a Declaration in the superior court in support of Application for Renewal of Judgment without disclosing that a payment of $ 35,000 was made on December 2, 2005. Defendants instead of crediting Plaintiff in an amount of $ 35,000, charged interest on that amount from December 2, 2005 ,the date of the payment.

250. Defendants improperly charged interest first before applying payment of $ 45,000 to the principal amount of the judgment as required by California law.

251. Defendants included an amount of $ 51,028.99 with interest at a rate of ten percent from April 23, 2004 to the judgment without having obtained a court

judgment in that amount as the Defendants had done in obtaining costs in prior

judgments.

252. Defendants included in the Declaration a judgment of $ 76,909.00 including cost

of $ 372.88 with interest from May 10, 2005, without disclosing payments in full from

Defendant Westport Insurance Corporation for the same attorney fees.

253. Defendants 'I& S' and their attorney 'GMSR' had entered a confidential

agreement with Defendants 'WIC' and Jay Brown not to disclose the amount of

payments made to 'I& S' and 'GMSR'.

254. Defendants included in the Declaration a judgment of $ 30,160.10 ($ 29,954.00

and cost of $ 206.10. with interest from June 13, 2006, without disclosing payments in

full from Defendant Westport Insurance Corporation for the same attorney fees.

255. Defendants (1) having devised or intending to devise a scheme to defraud

Plaintiff (2) used mail for the purpose of executing, or attempting to execute, the

scheme.

256. As a direct and proximate cause of Defendant's racketeering and corrupt acts and

use of **mail fraud** in violation of 18 U.S.C.A §1341, Plaintiff was deprived of his

property and injured in his business.

### *PREDICATE NO.: 10*

#### (Wire Fraud)

#### By 'I & S'; 'WIC' and Jay Brown

257. On or about February 14, 2013, the Defendant's Declaration in support of

judgment was posted on the Court's website for interstate public access and for

collection purposes without disclosing or crediting payments of $ 35,000 and instead

charged interest on that amount.

258. Defendants included an amount of $ 51,028.99 with interest at a rate of ten

percent from April 23, 2004 to the judgment without having obtained a court

1  judgment in that amount as the Defendants had done in obtaining costs in prior
2  judgments.

3  259. Defendants included in the Declaration a judgment of $ 76,909.00 including cost
4  of $ 372.88 with interest from May 10, 2005, without disclosing payments in full from
5  Defendant Westport Insurance Corporation for the same attorney fees.

6  260. Defendants included in the Declaration a judgment of $ 30,160.10 ($ 29,954.00
7  and cost of $ 206.10. with interest from June 13, 2006, without disclosing payments in
8  full from Defendant Westport Insurance Corporation for the same attorney fees.

9  261. The defendants voluntarily and intentionally devised or participated in a scheme
10  to defraud Plaintiff out of his money; (1) by entering a confidential agreement with
11  'WIC' and Jay Brown not to disclose payments made to 'I & S' and their attorney
12  'GMSR' (2) that the defendant did so with the intent to defraud; (3) that it was
13  reasonably foreseeable that interstate wire communications would be used; and (4)
14  that interstate wire communication system were in fact used.

15  262. As a direct and proximate cause of Defendant's racketeering and corrupt acts and
16  use of **wire fraud** in violation of 18 U.S.C.A §1343, Plaintiff was deprived of his
17  property and injured in his business.

18

19  ### *PREDICATE NO.11*

20  **(Mail Fraud)**

21  **By 'I & S'; 'WIC' and Jay Brown**

22  263. On March 15, 2013, the Defendants served by mail and filed a Declaration under
23  penalty of perjury and Notice of Involuntary Lien against Plaintiff in an amount of $
24  438, 594.16 without crediting Plaintiff $ 35,000 as of December 2, 2005 instead
25  charged interest on that amount from that date at a rate of ten percent .Defendants
26  charged interest first before applying payment of $ 45,000 to the principal amount of
27  the judgment as required by California law.

28

264. Defendants in the Application to Renew Judgment under penalty of perjury included an amount of $ 51,028.99 with interest at a rate of ten percent from April 23, 2004 without any court judgment in that amount as the Defendants had done in obtaining judgment on costs in prior judgments.

265. Defendants included in the Declaration and the Lien a judgment of $ 76,909.00 including cost of $ 372.88 with interest from May 10, 2005, without disclosing payments in full from Defendant Westport Insurance Corporation for the same attorney fees.

266. Defendants included in the Declaration and the Lien a judgment of $ 30,160.10 ($ 29,954.00 and cost of $ 206.10. with interest from June 13, 2006, without disclosing payments in full from Defendant Westport Insurance Corporation for the same attorney fees.

277. Defendants (1) having devised or intending to devise a scheme to defraud Plaintiff (2) used mail for the purpose of executing, or attempting to execute, the scheme.

288. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **mail fraud** in violation of 18 U.S.C.A §1341, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO.: 12*
### **(Wire Fraud)**
### **By 'I&S'; 'WIC' and Jay Brown**

289. On or about March 15, 2013, the Defendant's Declaration and Notice of Lien was posted on the Court's website for interstate public access and for collection purposes without disclosing or crediting payments of $ 35,000 and instead charged interest on that amount.

290. Defendants included an amount of $ 51,028.99 with interest at a rate of ten percent from April 23, 2004 to the judgment without having first obtained a court

1  judgment in that amount as the Defendants had done in obtaining costs in prior

2  judgments.

3  291. Defendants included in the Declaration and Notice of Lien a judgment of $

4  76,909.00 including cost of $ 372.88 with interest from May 10, 2005, without

5  disclosing payments in full from Defendant Westport Insurance Corporation for the

6  same attorney fees.

7  292. Defendants included in the Declaration and Notice of Lien a judgment of $

8  30,160.10 ($ 29,954.00 and cost of $ 206.10. with interest from June 13, 2006,

9  without disclosing payments in full from Defendant Westport Insurance Corporation

10 for the same attorney fees.

11 293. The defendants voluntarily and intentionally devised or participated in a scheme

12 to defraud another out of money; (2) that the defendant did so with the intent to

13 defraud; (3) that it was reasonably foreseeable that interstate wire communications

14 would be used; and (4) that interstate wire communication systems were in fact used.

15 294. As a direct and proximate cause of Defendant's racketeering and corrupt acts and

16 use of **wire fraud** in violation of 18 U.S.C.A §1343, Plaintiff was deprived of his

17 property and injured in his business.

### *PREDICATE NO.13*

#### (Mail Fraud)

#### By 'I & S'; 'WIC' and Jay Brown

22 295. On June 13, 2013, the Defendants served by mail and filed a Verified Second

23 Amended Application for Renewal of Judgment after the expiration of ten years

24 statutes of limitation for filing Application for Renewal of Judgment.

25 296.  In order to avoid the statutes of limitations, Defendants devised a scheme to

26 corrupt California Judicial Council Form EJ-190 by adding to the Caption of the Form

27 the letters  *"Nunc Pro Tunc"* to February 14, 2013 when in fact there was no February

28 14, 2013 Application for Renewal of Judgment against Plaintiff. The Defendants'

February 14, 2013 Application was in a wrong name and that was reason Defendants had amended February 14, 2013 Application on March 15, 2013, yet the Defendants backdated Second Amended Application to February 14, 2014.

297. This was done to mislead the Clerk of the Court, the Recorder's office. There is no California Judicial Council Form in existence which provides for '*nunc pro tunc*' applications for renewal of judgments after the expiration of ten years statutes of limitation.

298. Defendants filed the Verified Second Amended Application against Plaintiff in an amount of $ 408, 610.60 without crediting Plaintiff $ 35,000 as of December 2, 2005 instead charged interest on that amount from that date at a rate of ten percent.

299. Defendants included an amount of $ 51,028.99 with interest at a rate of ten percent from April 23, 2004 to the judgment without having first obtained a court judgment in that amount as the Defendants had done in obtaining costs in prior judgments.

300. Defendants included in the Verified Second Amended Application a judgment of $ 76,909.00 and cost of $ 372.88 with interest from May 10, 2005, without disclosing payments in full from Defendant Westport Insurance Corporation for the same attorney fees.

301. Defendants included in the Declaration a judgment of $ 30,160.10 ($ 29,954.00 and cost of $ 206.10. with interest from June 13, 2006, without disclosing payments in full from Defendant Westport Insurance Corporation for the same attorney fees. Defendants (1) having devised or intending to devise a scheme to defraud Plaintiff by entering confidential agreement with 'WIC" and Jay Brown (2) used mail for the purpose of executing, or attempting to execute, the scheme.

302. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **mail fraud** in violation of 18 U.S.C.A §1341, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO.: 14*

### **(Wire Fraud)**

### **By 'I & S'; 'WIC' and Jay Brown**

303. On or about June 13, 2013, the Defendants filed Verified Second Amended Application *Nunc Pro Tunc* to February 14, 2013 on a corrupted California Judicial Council Form EJ-190 was posted on the Court's website for interstate public access and for collection purposes without disclosing or crediting payments of $ 35,000 as of December 2, 2005 and instead charged interest on that amount from that date.

304. Defendants included an amount of $ 51,028.99 with interest at a rate of ten percent from April 23, 2004 to the judgment without having first obtained a court judgment in that amount as the Defendants had done in obtaining costs in prior judgments.

305. Defendants included in the Verified Second Amended Application for Renewal of Judgment an amount of $ 76,909.00 including cost of $ 372.88 with interest from May 10, 2005, without disclosing payments in full from Defendant Westport Insurance Corporation for the same attorney fees.

306. Defendants included in the Verified Second Amended Application for Renewal of Judgment an amount of $ 30,160.10 ($ 29,954.00 and cost of $ 206.10. with interest from June 13, 2006, without disclosing payments in full from Defendant Westport Insurance Corporation for the same attorney fees.

307. In all of the court papers filed by Defendants they never once admitted or denied the receipt of $35,000 from Plaintiff and receipt of attorney fees from Westport Insurance Corporation using as a trick, device or artifice to obtain judgment.

308. The defendants voluntarily and intentionally devised or participated in a scheme to defraud Plaintiff out of his money by conspiring with "WIC" and Jay Brown to conceal the payments made to "I & S" and "Greines"; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire

communications would be used; and (4) that interstate wire communication systems were in fact used.

309. As a direct and proximate cause of Defendant's racketeering and corrupt acts and use of **wire fraud** in violation of 18 U.S.C.A §1343, Plaintiff was deprived of his property and injured in his business.

### *PREDICATE NO.: 15*

### (Racketeering Act of Conspiracy to Cover Up
### Other Racketeering Activity)
### By 'I & S'; 'WIC' and Jay Brown

310. In order to cover up racketeering activity of double dipping and not crediting payments made ,Defendants conspired to cover up racketeering activity by entering a confidential agreement with Defendant Westport Insurance Corporation based in Kansas and its employee / in house counsel Jay Brown not to disclose payments made by Westport for attorney fees to 'I &S' and their attorney 'GMSR' upon which these Defendants' Claim against Plaintiff was based thus aiding and abetting the conspiracy to 'double dip' keeping Plaintiff and the California Court in the dark.

311. As a result Defendant Jay Brown and Westport disobeyed subpoena from California Courts for discovery of money paid to Defendants 'I & S' and their attorney 'GMSR' and caused judgment against Plaintiff.

312. As a direct result and proximate to Defendant's racketeering acts under 18 U.S.C.S § 1962 (c) and (d).Plaintiff was injured in his business and property interests.

### COUNT ONE-RICO
### [18.U.S.C. § 1961(1) (A), (B); § 1962(c); §1964 (c)]
### Against All Defendants

Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-through 312 as if fully set forth herein.

313. At all relevant times the Iungerich & Spackman, A Law Corporation is an Enterprise within the meaning of 18 U.S.C.A § 1961(4) and the individual Defendants Russell Iungerich, Paul Spackman were members of the Enterprise and co-conspirators. They were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961 (3) and 1962(c).

314. At all relevant times the Westport Insurance Corporation is an Enterprise within the meaning of 18 U.S.C.A § 1961(4) and the individual Defendant Jay Brown is an employee / in house counsel and member of the Enterprise and a co- conspirator. Both the "Enterprise" and Defendant Jay Brown are a "person" within the meaning of RICO, 18 U.S.C. §§ 1961 (3) and 1962(c).

315.At all relevant times these individuals conspirators formed an **association–in fact** for the purpose of defrauding Plaintiff of his property. The association in fact was an "enterprise" within the meaning of RICO 18 U.S.C.S. 1961(4).

316. At all relevant times, these "enterprises" was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962 (c).

317. At all relevant times, individual Defendants and conspirators associated with the "enterprises" **knowingly ,willfully** conduced or participated, directly or indirectly, in the conduct of the enterprises' affairs through a "**pattern of racketeering activity**" within the meaning of RICO,**18 U.S.C.§ 1961 (5)** in violation of RICO, **18 U.S.C. § 1962 (c).**

318. Specifically, at all relevant times, these individual defendant conspirators **knowingly and willfully** engaged in "**racketeering activity**" within the meaning of **18 U.S.C. § 1961 (1)** by engaging in acts set forth above. The acts set forth above constitute a violation of one or more of the following statutes: **18 U.S.C. §1341** [mail fraud]; **18 U.S.C. § 1343** [wire fraud], **§1952** [relating to racketeering]; **18 U.S.C. 1961.**

319. The individual Defendants and each of them committed and abetted the commission of two or more of these acts of racketeering activity.

320. The acts of racketeering activity referred to in the previous paragraphs constituted a "**pattern of racketeering activity**" within the meaning of 18 U.S.C. § 1961 (5). These acts alleged were related to each other by virtue of common participants, a common victim [the Plaintiff] a common method of commission, and the common purpose and common result of defrauding Plaintiff of over $ 500,000, enriching the conspirators at the Plaintiff's expense while concealing the *fraudulent scheme* under the guise of false, fraudulent charges, false writs of executions, involuntary liens and *nunc pro tunc* judgments against Plaintiff further concealing its fraudulent scheme and racketeering activities by preventing compliance with Subpoena for discovery of money paid to Defendants by Defendant Westport and Defendant Jay Brown.

321. As a direct result of Defendants' violation of 18 U.S.C. § 1962(c) and the *fraudulent scheme* Plaintiff has lost money and became indebted to $ 408, 610.60 in his business.

322. As a result of its misconduct, Defendants are liable to Plaintiff for its losses in an in excess of $ 500,000.

323. Pursuant to RICO, 18 U.S.C. § 1964 (c), the Plaintiff is entitled to recover threefold its damages plus costs and attorneys' fees from Defendants.

## COUNT TWO-RICO CONSPIRACY

### [18 U.S.C. §1962(d)]

### Against All Defendants

Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1through 323 of the Complaint as if fully set forth herein and alleges

324. Defendants and the other conspirators committed and caused to be **committed a series of overt acts** in furtherance of the conspiracy and to affect the object thereof, including but not limited to acts set forth above.

325. Defendant and two or more persons in some way or manner came to a mutual understanding to attempt to accomplish a common and unlawful plan while engaged in activities which affected interstate or foreign commerce, or conducted the affairs of the alleged enterprise through a pattern of racketeering activity in the manner charged as above.

326. That the defendants **knowingly and willfully** became a member of the conspiracy by objectively indicating through words or actions, his agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

327. As result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff lost money and became indebted to $ 408,610.60 of dollars in his business and property.

328. Pursuant to RICO, 18 U.S.C. § 1964 (c), the Plaintiff is entitled to recover threefold its damages plus cost and attorney fees from Defendant "SACH"

## **FOURTH CLAIM**
## **CONSPIRACY TO VIOLATE CIVIL RIGHTS**
### **(42 U.S.C. § 1985. § 1986; § 1988)**

Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-328 of this complaint as if fully set forth herein and alleges:

329. That all of the Defendants their officers, agents , attorneys and each of them conspired to deny Plaintiff benefit of full and equal rights under the law to his property.

330. Plaintiff belongs to a protected class based on his ethnicity, East Indian-Pakistani race and as a Muslim originating from Pakistan. Defendant Iungerich

used racial and ethnic slurs against Plaintiff after he discharged him as attorney and filed malpractice suit against him.

331. The Defendants conspired with its agents and attorneys to defraud Plaintiff of his money by fraudulent billings, false writ of executions, false judgments and liens, concealing from the court and Plaintiff payments received from Westport in order to injure him or his property from lawfully enforcing, or attempting to enforce, his rights, to the equal protection of the laws.

332. Defendants conspired with its agents and attorneys for the purpose of depriving, either directly or indirectly, Plaintiff, a member of protected class of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted judicial authorities of the State of California from giving or securing Plaintiff the equal protection of the laws; through concealment, misrepresentations, secrecy and disobedience of subpoena.

333. The Defendant acted in furtherance of the object of such conspiracy, knowingly, intentionally, willfully neglected or **refused to prevent conspiracy** to credit Plaintiff for the money paid by him and by 'Westport' predicated upon Plaintiff's religion, national origin and ethnicity and in retaliation for 9/11 incident.

334. Defendants believe that Plaintiff does not belong in this country even though Plaintiff served in the U.S. Navy and is a Vietnam War Veteran and was honorably discharged. That Plaintiff has no right to earn a livelihood and whatever he has earned rightfully belongs to them. That these Defendants are entitled to possess all Plaintiff has even if takes a hook or crook to achieve their objectives.

335. The conduct of defendants directly and proximately caused Plaintiff to lose money and became indebted to a tune of hundreds of thousands of doors thus leaving door open for further harassment and mischief.

## FIFTH CLAIM

## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 335 of this Complaint as if fully set forth herein and alleges:

336. Plaintiff deserved and was entitled to peace of mind and security in his life and to enjoy normal life like the rest of the public. Defendants destroyed peace of mind by prosecuting fraudulent claims obtaining fraudulent oppressive judgments based on concealment of payments and misrepresentations and have consumed Plaintiff in defending litigations brought upon him by Defendants in the past 18 years.

337. Defendants caused mental suffering and destroyed comfort, peace of mind, happiness and personal esteem by conducting lengthy, harassing debtor examination, discovery; meritless fraudulent conveyance lawsuit, criminal investigation, false fraudulent writ of executions, false fraudulent applications for renewal of judgments, fraudulently altering Judicial Council Form in order to revive a dead judgment.

338. Defendants wiped out all his personal savings and subjecting him to debts and abuse. Defendants conduct was extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized community.

339. Defendants knew from debtor examination that Plaintiff was in a very precarious financial condition for defending false, frivolous fraudulent litigation that he was going to burdened with further debts in attorney fees in defending frivolous false lawsuits and proceedings at the expense of his piece of mind and meagre resources while there was no immediate end in sight of Defendants misconduct against Plaintiff.

340. As a direct and proximate cause of Defendant's acts, Plaintiff was subjected to extreme emotional distress when caused to suffer humiliation and extreme mental and emotional distress including but not limited to pain, nervousness,

anxiety, strain, worry, grief, torment, mortification, embarrassment. Plaintiff suffered from physical symptoms of nausea, vomiting, headaches, sleeplessness, nightmares and fatigue requiring Plaintiff to take medications.

341. As a direct result and proximate to Defendants' outrageous conduct extending over a decade, Plaintiff has suffered in an amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiff prays judgment against each and every defendant jointly and severally in favor of Plaintiff as follows:

1. Actual Damages.

2. General and Compensatory Damages for damage and injury to business, occupation or property in an amount according to proof.

3. For treble damages for injury to business or property trebled in accordance with 18 U.S.C. § 1964(c).

4. For damages for interfering with the civil rights under 42 U.S.C §1985, § 1986.

5. For damages for mental anguish and emotional distress.

6. For punitive damages.

7. For reasonable attorney fees in accordance with 18 U.S.C. § 1964 (c), and

8. For cost of investigation in an undetermined amount trebled in accordance with U.S.C. § 1964 (c).

9. For any other relief the court deem fit and proper.

PLAINTIFF DESIGNATES KANSAS CITY, KANSAS AS PLACE OF TRIAL.

May 28, 2015

Jehan Zeb Mir, M.D.

Plaintiff pro-se

COMPLAINT FOR DAMAGES - 61

1

## **VERIFICATION**

2  I, Jehan Zeb Mir, declare

3  That I know the following facts from my personal knowledge and I could and
4  would competently testify if called to do so.

5  1. I am the Plaintiff. I have prepared the Complaint. I know the facts from my
6  personal knowledge and verify it to be true of my own personal knowledge
7  except as those matters which are stated on information and belief and as to
8  those matters I believe them to be true.

9  I declare under the penalty of perjury that foregoing is true and correct.
10  Executed on May 28, 2015 at Redondo Beach, CA 90277

13  Jehan Zeb Mir, MD
14  Plaintiff Pro-se

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES - 62