**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

JEHAN ZEB MIR,

    **Plaintiff**,

v.

JAY BROWN, et al.,

    **Defendants.**

Case No. 15-9097-JAR-JPO

**MEMORANDUM AND ORDER**

Plaintiff Jehan Zeb Mir, proceeding *pro se*, filed this case in May 2015 against Kansas Defendants Jay Brown and Westport Insurance Corporation ("Westport Defendants"), and against California Defendants Iungerich & Spackman, a Professional Law Corporation, Russell Iungerich, and Paul Spackman ("I & S Defendants"). Plaintiff seeks monetary damages for federal and California state-law claims. This matter is now before the Court on the Westport Defendants' Motion to Dismiss (Doc. 17) under Fed. R. Civ. P. 12(b)(6), which the individual I & S Defendants have joined.[1] For the reasons explained below, the Court grants the Westport Defendants' motion, grants individual Defendants Iungerich's and Spackman's motions to dismiss, and orders Defendant I & S to show cause why the Court should not direct the clerk to enter default pursuant to Fed. R. Civ. P. 55(a).

**I.  Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, when assumed to be true, "raise a right to relief above the

---

[1]Docs. 28, 29. Defendants also assert a lack of personal jurisdiction.

1

speculative level"[2] and must include "enough facts to state a claim for relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[4] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[5] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content

---

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[3]*Id*. at 570.

[4]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[6]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[8]*Id*. (quoting *Twombly*, 550 U.S. at 555).

[9]*Id.* at 678–79.

[10]*Id*. at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

A district court can take judicial notice of its own decisions and records in a prior case involving the same parties without converting a motion to dismiss the latter case into a motion for summary judgment.[12]

Finally, because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis. The Court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[13] However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[14] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[15]

## II. Procedural History and Background

In 1985, Plaintiff, a physician, was terminated from a California hospital for alleged misconduct.[16] In 1992, Plaintiff employed Defendant I & S, a California law firm, and individual lawyers, Defendants Iungerich and Spackman, to represent him in a lawsuit against the hospital for lost income because of that termination, which ended in a judgment adverse to Plaintiff.[17]

---

[11]*Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[12]*See Merswin v. Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010).

[13]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[14]*Id.*

[15]*Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[16]Doc. 1 at 6–7.

[17]*Id.* at 7–8.

In 2001, Plaintiff filed a malpractice lawsuit in California state court against I & S and its lawyers relating to the 1992 lawsuit.[18] I & S's malpractice carrier, Defendant Westport Insurance Corporation ("Westport"), retained Greines, Martin, Stein & Richland, LLP ("Greines Martin") to defend I & S in the malpractice action.[19] I & S counterclaimed for $58,000 in unpaid legal fees, costs, and interest.[20] Plaintiff and I & S negotiated a settlement that contemplated a payment by I & S of $45,000 to settle the malpractice suit, without mentioning the unpaid attorney's fees.[21] I & S successfully moved to enforce the "Settlement Terms," resolving the malpractice case, which Plaintiff contends was error by the state court.[22] In March 2003, the state court awarded I & S $85,147.06 in attorney's fees plus interest and costs, which was increased to $100,897.06.[23]

Plaintiff appealed the state-court judgment in May 2003. The judgment was affirmed, and Plaintiff was subsequently ordered to pay I & S an additional $76,909 in attorney's fees for the appeal.[24] On November 5, 2004, I & S filed suit for fraudulent conveyance of a property that Plaintiff sold in 2001, which was eventually settled when Plaintiff agreed to pay I & S $35,000.[25]

I & S continued to attempt to collect on its judgment in state court for the next decade. During this period, I & S carried a professional-liability policy issued by Westport and I & S filed a claim with Westport for Greines Martins' attorney's fees in connection with the matter.[26]

---

[18]*Id.* at 11.
[19]*Id.*
[20]*Id.*
[21]*Id.* at 12.
[22]*Id.* at 13–14.
[23]*Id.* at 15.
[24]*Id.* at 16
[25]*Id.* at 19.
[26]*Id.* at 19–20.

In 2006, I & S attempted to execute on its judgment and Plaintiff argued that the amount of interest was improperly calculated and did not reflect credit for the funds received from Westport in connection with the prior settlement.[27]

In 2013, I & S retained the law firm of Frandzel, Robin, Bloom, Csato, LC ("FRBC") to assist in its collection efforts. In March 2013, I & S filed in the Los Angeles County Superior Court an Amended Application for Renewal of Judgment in the amount of $438,594.16 ("Renewal of Judgment"). On March 18, 2013, I & S recorded a Notice of Involuntary Lien and Amended Application for renewal of judgment in that same amount. Plaintiff moved to set aside and vacate the Renewal of Judgment on the grounds that I & S and FRBC had, among other things, improperly included in the judgment attorney's fees in the amount of $76,160 and $30,160 that had already been paid by I & S's professional-liability insurer, Westport.[28] Jay Brown is a Kansas attorney who provided legal services to Westport in connection with a subpoena duces tecum served on Westport's offices in May 2013. Plaintiff alleged that I & S, Westport, and Brown engaged in "double dipping" and fraudulently concealed the fact of such payments from Plaintiff and the court.[29] The California state court found for Plaintiff only on the failure to credit the $45,000 settlement and revised the judgment down to $408,610.60, but made no findings that I & S acted fraudulently.[30] The state court directed I & S and FRBC to enter a new judgment *nunc pro tunc*.[31]

Plaintiff appealed the state-court judgment to the California Court of Appeals. On

---

[27]*Id.* at 21–23.
[28]*Id.* at 24–25.
[29]*Id.* at 26.
[30]*Id.* at 29.
[31]*Id.* at 30.

January 9, 2015, that court affirmed the judgment in the amount of $408,610.60 but found that the trial court's "use of the *nunc pro tunc* procedure to be improper," because it was used to correct a mistake of the parties, not to correct clerical errors.[32]

While his appeal was pending, Plaintiff filed a lawsuit on May 29, 2014, in the United States District Court for the Central District of California ("the 2014 federal action") against FRBC, I & S, I & S's former counsel, Greines Martin, and I & S's malpractice carrier, the Westport Defendants.[33] Plaintiff asserted the following causes of action stemming from the defendants' conduct in attempting to obtain and enforce the California state judgment: (1) racial discrimination under 42 U.S.C. § 1981; (2) deprivation of rights by a person acting under color of state law under 42 U.S.C. § 1983; (3) conspiracy to violate civil rights under §§ 1985 and 1986; (4) civil RICO claims under 18 U.S.C. § 1964(c); and (5) various California state law claims.[34]

Defendants Brown and Westport moved to dismiss.[35] Brown, a Kansas resident, argued that the California court lacked personal jurisdiction over him pursuant to Fed. R. Civ. P. 12(b)(2), because he had no contacts with the state and no other bases for jurisdiction existed.[36] On January 12, 2015, the court granted Brown's motion and dismissed all claims against him "without leave to amend," holding that "further amendment would be futile."[37] Westport successfully argued that dismissal was appropriate under Fed. R. Civ. P. 12(b)(6) because

---

[32]*Mir v. Iungerich & Spackman*, No. B250393, 2015 WL 389634, at *4 (Cal. Ct. App. Jan. 29, 2015), *as modified on denial of reh'g* (Feb. 10, 2015), *reh'g denied* (Feb. 18, 2015), *review denied* (Apr. 15, 2015).

[33]*Mir v. Greines, Martin, Stein & Richland*, No. 2:14-cv-4132-CAS-(FFMx), 2015 WL 4139435 (C.D.Cal. Jan. 12, 2015).

[34]*Id.* at *17–23.

[35]*Id.* at *1.

[36]*Id.* at *6–8.

[37]*Id.* at *8–13.

Plaintiff failed to set forth facts sufficient to state a claim.[38] The court dismissed the Amended Complaint and all of Plaintiff's federal claims against Westport "without leave to amend," and declined to exercise supplemental jurisdiction over Plaintiff's state law claims.[39]

On February 19, 2015, the California federal district court dismissed Plaintiff's federal claims against the defendant law firms and their members under RICO and 42 U.S.C. §§ 1981, 1983, 1985, and 1986, without leave to amend.[40] The claims were dismissed on two grounds: (1) the claims were based on litigation activities that constituted First Amendment-protected petitioning of the government and thus were barred by *Noerr-Pennington* immunity;[41] and (2) even if that were not the case, Plaintiff failed to state any claim.[42] The court declined to exercise supplemental jurisdiction over Plaintiff's state-law claims.[43]

Plaintiff appealed the judgment of dismissal in the 2014 federal action to the Ninth Circuit Court of Appeals on March 17, 2015. While the appeal was pending, on May 29, 2015, Plaintiff filed this lawsuit against only the I & S Defendants and the Westport Defendants.[44] In the proceedings before this Court, Plaintiff asserts claims against Defendants for (1) intentional interference with contractual rights under 42 U.S.C. § 1981; (2) extrinsic fraud; (3) civil RICO violations pursuant to 18 U.S.C. § 1964(c); (4) conspiracy to violate civil rights pursuant to 42 U.S.C. §§ 1985 and 1986; and (5) intentional infliction of emotional distress. Plaintiff alleges

---

[38]*Id.* at *15–23.

[39]*Id.* at *23.

[40]*Mir v. Greines, Martin, Stein* & Richland, No. 2:14-4132-CAS(FFMx), 2015 WL 12746231, at *6 (C.D. Cal. Feb. 19, 2015).

[41]*Id.* at *6–7. "The *Noerr-Pennington* doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." *Id.* (quoting *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)).

[42]*Id.* at *8–14.

[43]*Id.* at *14–15.

[44]Doc. 1.

that the I & S Defendants conspired with the Westport Defendants to injure Plaintiff by "double dipping" in obtaining two separate attorney's fee judgments against Plaintiff in 2005, 2006, and 2013.

On November 6, 2015, Magistrate Judge Gerald Rushfelt stayed the case pending the outcome of the appeal to the Ninth Circuit.[45] On January 18, 2017, the Ninth Circuit affirmed the California district court's judgment dismissing Plaintiff's claims.[46] The court found the district court properly determined that (1) the defendant law firms, as well as the individual defendants associated with those firms, are immune from liability under the *Noerr-Pennington* doctrine; and (2) Plaintiff failed to allege facts sufficient to show that defendants' state-court litigation was objectively baseless.[47] The court also found the district court properly dismissed Plaintiff's federal claims against Westport because he failed to allege facts sufficient to state a plausible claim for relief on his RICO claim or claims alleging violations of §§ 1981, 1985, or 1986.[48] The court upheld the district court's dismissal of all claims against Brown for lack of personal jurisdiction.[49] The court found the district court did not abuse its discretion in dismissing Plaintiff's complaint without leave to amend, and denied without prejudice defendants' request to declare Plaintiff a vexatious litigant.[50]

After the Motion to Stay was filed, but before Defendants' answers were due, Plaintiff filed an application for clerk's entry of default against the I & S Defendants.[51] While the stay

---

[45]Doc. 14.

[46]*Mir v. Greines, Martin, Stein & Richland*, 676 F. App'x 699 (9th Cir. 2017).

[47]*Id.* at 701 (citations omitted).

[48]*Id.* (citations omitted).

[49]*Id.* (citations omitted).

[50]*Id.* (citations omitted).

[51]Docs. 9, 10, 11.

8

was pending, but before the Court determined that the Ninth Circuit had ruled, Plaintiff filed a Motion to Amend his Complaint seeking to add as defendants Greines Martin and FRBC as well as individual members of those firms.[52]

On January 30, 2018, Judge Rushfelt issued an Order to Show Cause, directing the parties to show cause to this Court in writing the following: (1) why this Court's order to stay should not be lifted in light of the possibility that the Ninth Circuit litigation had concluded; (2) whether Plaintiff's pending motion for leave to amend should not be denied in light of findings (with details as to date and time of any ruling(s)) by the Ninth Circuit Court of Appeals in similar litigation between the parties; and (3) whether the claims in this case should not be dismissed as a result of any dispositive finding(s) by the Ninth Circuit Court of Appeals in the litigation before it.[53] The Westport Defendants responded by moving to dismiss Plaintiff's causes of action under theories of res judicata and collateral estoppel.[54]

The Court entered an order lifting the stay in part; denied without prejudice Plaintiff's Applications for Entry of Default and Motion for Leave to Amend; granted the I & S Defendants twenty-one days to answer or otherwise respond to Plaintiff's Complaint; construed the Westport Defendants' response to the Order to Show Cause as a Motion to Dismiss for failure to state a claim under Rule 12(b)(6), with corresponding response deadlines; and stayed all further discovery until any motions to dismiss were resolved by this Court.[55] Defendants Russell Iungerich and Paul Spackman entered a limited appearance for the purposes of joining the

---

[52]Doc. 15.

[53]Doc. 16. The parties did not notify the Court that the Ninth Circuit had issued its opinion.

[54]Doc. 17.

[55]Doc. 27.

Westport Defendants' Motion to Dismiss.[56]  Plaintiff has responded and requests entry of default against Defendant I & S.[57]

## III. Discussion

### A. Res Judicata

Defendants argue that Plaintiff's federal claims are subject to the doctrinal bar of res judicata because he already asserted the same claims unsuccessfully in the 2014 federal action, which resulted in a final judgment on the merits that was affirmed by the Ninth Circuit Court of Appeals.  The Court agrees.

#### 1. Standards

 "Because res judicata is an affirmative defense, the burden of proof rests with the defendant."[58]  "[A] defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim."[59]  The defense can be presented "on records from prior cases with the same parties."[60]  The court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."[61]  "Within the res judicata framework, this court applies federal law to determine the effect of a previous federal judgment, even if that judgment was issued in a case based on

---

[56]Docs. 28, 29.

[57]Doc. 30.  Plaintiff did not renew his request for leave to amend his Complaint.

[58]*Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1132 (D. Kan. 2018) (citing *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1256 (10th Cir. 1997), *cert. denied*, 523 U.S. 1064 (1998)).

[59]*Jiying Wei v. Univ. of Wyo. College of Health Sch. Pharmacy*, 759 F. App'x 735, 739 (10th Cir. 2019) (quoting *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)) (holding defendants could properly raise res judicata defense in Rule 12(b)(6) motion).

[60]*Id.* (citing *Merswin v. Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010)).

[61]*United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (citations omitted), *cert. denied*, 552 U.S. 969 (2007).

diversity jurisdiction."[62]

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"[63] As relevant here, "[c]laim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."[64] "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so."[65] Claim preclusion requires three elements: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[66] "In addition, even if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action."[67]

"To determine what constitutes a 'cause of action' for preclusion purposes, this court has adopted the 'transactional approach' found in the *Restatement (Second) of Judgments* § 24."[68] This approach, as adopted by the Tenth Circuit, states:

> [A] final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What constitutes a "transaction" or a "series" is to be determined

---

[62]*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002).

[63]*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

[64]*New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

[65]*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006) (citation omitted)).

[66]*Id.* (quoting *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)).

[67]*Id.* (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)).

[68]*MACTEC*, 427 F.3d at 832.

pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit.[69]

## 2. Application

In making its determination as to whether the res judicata factors are met, the Court will examine the record from the 2014 federal action to determine whether Plaintiff's federal claims are barred with respect to each Defendant.

### *Westport, Iungerich, and Spackman*

The elements of claim preclusion are easily satisfied with respect to Defendants Westport, Iungerich, and Spackman. The 2014 federal action (1) ended in a judgment on the merits of Plaintiff's federal claims in that case; (2) included Westport, Iungerich, and Spackman as defendants; and (3) the suit was based on the same causes of action, specifically racial discrimination under § 1981, conspiracy to violate civil rights under §§ 1985 and 1986, and civil RICO violations under 18 U.S.C. § 1964(c).

Plaintiff provides no reason to believe he lacked a full and fair opportunity to litigate his claims, as the Ninth Circuit rejected Plaintiff's challenge to the district court's decision not to grant leave to further amend his complaint.[70] Plaintiff's argument that the California Court of Appeal's January 2015 decision somehow gives rise to "new claims" that Defendants refused to abandon certain legal remedies in this case is without merit. The Tenth Circuit has explained that a plaintiff cannot "avoid supplementing his complaint with facts *that are part of the same transaction* asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion."[71] Instead, "[u]nder the transactional test a new action

---

[69]*King v. Union Oil of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997) (quoting *Lowell Staats Mining Co., Inc. v. Phila. Elec. Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989)) (alteration in original).

[70]*Mir v. Greines, Martin, Stein & Richland*, 676 F. App'x 699, 701 (9th Cir. 2017).

[71]*Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006) (emphasis in original).

will be permitted only where it raises *new and independent* claims, not part of the previous transaction, based on the new facts."[72] Plaintiff has not established any new claims independent of and lacking any transactional nexus with the claims adjudicated in the 2014 federal action. Even if Plaintiff has raised new and independent claims, however, they still would be precluded, as "the object of the first proceeding was to establish the legality of the continuing conduct into the future."[73] Here, the Court of Appeals expressly rejected Plaintiff's argument that there is no longer an enforceable judgment.[74]

Accordingly, the Court finds that Plaintiff's federal claims against Defendants Iungerich, Spackman, and Westport are barred by the doctrine of claim preclusion and are appropriately dismissed on this ground.

### *Brown*

Plaintiff argues that because the claims against Brown in the 2014 federal action were dismissed for lack of personal jurisdiction, his present claims are not precluded because there was no final judgment on the merits of Plaintiff's claims against Brown.[75] Brown argues that because he is in privity with Westport, the prior adjudication on the merits against Westport precludes the same federal claims being relitigated against Brown in these proceedings. The Court agrees.

---

[72]*Id.* (citation omitted) (emphasis in original).

[73]*Id.* at 1151 (citation omitted).

[74]*Mir v. Iungerich & Spackman*, No. B250393, 2015 WL 389634, at *4 (Cal. Ct. App. Jan. 29, 2015), *as modified on denial of reh'g* (Feb. 10, 2015), *reh'g denied* (Feb. 18, 2015), *review denied* (Apr. 15, 2015).

[75]*See* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4432, at 52 (2d ed. 2002) ("A judgment dismissing an action for want of personal jurisdiction, for example, may be clearly final and preclusive on the jurisdiction issue but it is not on the merits for purposes of claim preclusion.").

Generally, claim preclusion requires that the named parties in the first and second suits be identical.[76] An exception to this rule applies when there is "privity" between the defendants bound by the first suit and the defendants named in the second suit.[77] The Tenth Circuit has recognized "that no definition of privity can be automatically applied in all cases involving the doctrine of res judicata."[78] "At a minimum, privity requires a showing that the parties in the two actions are 'really and substantially in interest the same.'"[79] "Privity may . . . be established if the party to the first suit represented the interests of the party to the second suit."[80]

The Tenth Circuit has found privity in a variety of corporate contexts, including a corporation and its agent.[81] Here, Brown provided legal services with respect to the underlying proceedings for Westport at all times relevant to Plaintiff's claims, as alleged throughout Plaintiff's Complaint.[82] Indeed, Plaintiff alleges that Brown was acting as Westport's agent and that Brown was acting under the scope of his employment, "which was in furtherance of [sic] business and interest of Westport."[83] All of Plaintiff's claims against Westport and Brown as Westport's agent arise out of Westport's defense of Plaintiff's 2001 legal-malpractice claim against Westport's insureds, the I & S Defendants, and the subsequent attempts to collect on the

---

[76]*Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008).

[77]*Id.* at 1281.

[78]*Id.* (internal quotation marks omitted).

[79]*Lenox MacLaren Surgical Corp. v. MedTronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014) (quoting *Pelt*, 539 F.3d at 1281).

[80]*Trapp v. Pro*, No. 05-4104-JAR, 2006 WL 1517763, *9 (D. Kan. May 25, 2006) (quoting *Satsky v. Paramount Comm'ns Inc.*, 7 F.3d 1464, 1468 (10th Cir. 1993) (citation omitted)).

[81]*See Lowell Staats Mining Co. v. Phila. Elec. Co.*, 878 F.2d 1271, 1276 (10th Cir. 1989); *see also, e.g., Fox v. Maulding*, 112 F.3d 453, 459–60 (10th Cir. 1997) (corporation and its officers and directors); *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995) (subsidiary and its "controlling" parent); *Circle v. Jim Walter Homes, Inc.*, 654 F.2d 688, 692 (10th Cir. 1981) (subsidiary assignee and its sister-subsidiary and parent).

[82]Doc. 1 at ¶¶ 10, 128, 129.

[83]*Id.* ¶ 11.

state-court judgment. Plaintiff brought identical claims against Brown and Westport in the 2014 federal action stemming from the same underlying transaction; the court dismissed the federal claims against Westport with prejudice, as affirmed by the Ninth Circuit. Because Brown and Westport share an interest that was "really and substantially" the same, Brown is in privity with Westport and the "same party" element of the claim-preclusion test is met. Accordingly, all three elements are met, and Plaintiff's claims against Brown are also barred by res judicata.

### *I & S*

This leaves Defendant I & S, the law firm. The Court takes judicial notice that on June 1, 2015, after the 2014 federal action was dismissed, and while Plaintiff's appeal to the Ninth Circuit was pending, Plaintiff filed yet another federal lawsuit against I & S and FRBC in the Central District of California asserting claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), intentional interference with contractual rights under § 1981, violation of California's FDCPA, judicial estoppel and accounting, malicious prosecution, and intentional infliction of emotional distress.[84] The California District Court, which also presided over the 2014 federal action, granted FRBC and I & S's motions to dismiss with respect to Plaintiff's federal claims as barred by the doctrine of claim preclusion and declined to exercise supplemental jurisdiction over Plaintiff's state-law claims.[85] The court also held, for the second time, that it was clear that Plaintiff's federal claims could not be saved by amendment and thus dismissed the federal claims with prejudice to refiling.[86] Plaintiff appealed this decision to the Ninth Circuit, which affirmed dismissal of the federal claims on the basis of res judicata.[87]

---

[84]*Mir v. Frandzel, Robin, Bloom, Csato. LC*, No. 2:15-cv-04101-CAS (FFMx), 2016 WL 4425715, *1–3 (C.D. Cal. Aug. 16, 2016).

[85]*Id.* at *4–8.

[86]*Id.* at *8.

[87]*Mir v. Frandzel, Robin, Bloom, Csato, LC*, 699 F. App'x 752 (9th Cir. 2017).

Accordingly, Plaintiff's federal claims against I & S have now been twice dismissed by the California district court, and the Ninth Circuit has affirmed both judgments of dismissal. However, while it appears that Plaintiff's present claims against I & S are also subject to dismissal on res judicata grounds, the Court cannot dismiss the case in its entirety at this time. As previously discussed, this Court lifted the stay and denied without prejudice Plaintiff's applications for entry of default against the I & S Defendants. Although its principals, Iungerich and Spackman, filed *pro se* motions to join in the Westport Defendants' motion to dismiss, they did not enter an appearance on behalf of the law firm, a Professional Law Corporation that has failed to plead or otherwise defend the claims against it in this lawsuit. Accordingly, the Court directs Defendant I & S to show cause to this Court, in writing, why default should not be entered against it in this matter pursuant to Fed. R. Civ. P. 55(a).

### B. Supplemental Jurisdiction Over Remaining State-Law Claims

In addition to his federal claims, Plaintiff asserts claims for "extrinsic fraud" and intentional infliction of emotional distress, both based on Defendants' collection efforts. It appears that Plaintiff brings these claims under California state law. In the event the Court dismisses Plaintiff's federal claims against I & S, it must also decide whether to exercise supplemental jurisdiction over Plaintiff's state law-claims—as the California district court declined to do in the 2014 federal action—or to dismiss these claims without prejudice.

A district court may "decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction."[88] The Supreme Court has advised that, absent another ground for federal subject matter jurisdiction, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims

---

[88] 28 U.S.C. § 1367(c)(4).

remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."[89] The Tenth Circuit counsels courts to "generally decline to exercise supplemental jurisdiction when no federal claims remain because "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[90] The Court defers its decision on whether to exercise supplemental jurisdiction over Plaintiff's state law claims until it has ruled on Plaintiff's remaining claim against I & S.

**IT IS THEREFORE ORDERED BY THE COURT** that the Westport Defendants' Motion to Dismiss (Doc. 17), as joined by Defendants Iungerich and Spackman (Docs. 28, 29), is **GRANTED**;

**IT IS FURTHER ORDERED THAT** Defendant Iungerich & Spackman, a Professional Law Corporation, is ordered to show cause to this Court, in writing, on or before **May 30, 2019,** why default should not be entered against it pursuant to Fed. R. Civ. P. 55(a) for failure to plead or otherwise respond; if Defendant I & S fails to respond and show cause, the Court will direct the clerk to enter its default. The Clerk's Office is directed to mail a copy of this Order to I & S at the address provided in the service of Summons.

**IT IS SO ORDERED.**

Dated: <u>May 16, 2019</u>

           S/ Julie A. Robinson
           JULIE A. ROBINSON
           CHIEF UNITED STATES DISTRICT JUDGE

---

[89]*See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Hubbard v. Oklahoma ex rel. Oklahoma Dep't of Human Servs.*, 759 F. App'x 693, 713 (10th Cir. 2018) (citations omitted).

[90]*Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).